EMILY M. BURRALL v. JOHN H. BENDER, L. C. HURD, AND FRANKLIN L. SMITH.

*Dower— Where husband leaves a will in which he disposes of all of his prop-erty—Making no provision for second wife—Who survives him—Her dower rights are the same as if he had died intestate—And are limited to lands whereof he was seized of an estate of inheritance during coverture —If mortgaged before second marriage for purchase money— Widow dowable as against all persons except mortgagee—And those claiming under him—In such case, and where she joined in the mortgage, she is entitled to dower in surplus realized on foreclosure sale— Widow's rights measured by How. Stat. secs. 5735–8—Amount owing on mortgage at date of husband's death—Should be deducted from the value of mortgaged premises—And land equal in value to one-third of the residue be set apart to the widow—This may all be done in ejectment for such dower—It not being required to be "set off" before bringing such action.*

1. Where a husband, during the life-time of his *first* wife, made a will disposing of *all* of his property, and after her death remarried, and died without making any change in said will or in any way provid-ing for the *second* wife,—

   *Held,* that her dower rights in his estate are the same as if he had died intestate, and are limited to lands whereof he was seized of an estate of inheritance at any time during the second marriage.

   *Held,* further, that as to any *such* lands mortgaged *before* the mar-riage, or for *purchase* money, she is entitled to dower, as against all persons except the mortgagees, and those claiming under them; and that in *such* cases, as also where she joined in the mortgage during coverture, she has a dower right in any *surplus* realized on a *fore-closure* sale.

2. Where a husband died *testate*, but without making any provision for a *second* wife, who survived him, and who joined with him in the exe-cution of a mortgage upon his real estate during coverture, of which land he died seized, subject to such incumbrance,—

   *Held,* that the dower rights of the widow are measured by How. Stat. §§ 5735–8, both inclusive, and are subject to said mortgage; and that, in determining the same, the amount owing upon the mortgage at date of the husband's death should be deducted from the value of the mortgaged premises, and land set apart to the widow therefrom equal in value to one-third of the residue.

   *Held,* further, that this may all be done in the action of ejectment to recover such dower.

3. Dower is not required to be "set off" before bringing ejectment, under

our law;[1] the statute authorizing all the proceedings necessary for the endowment of the widow. How. Stat. § 7845.

Error to Jackson. (Gridley, J.) Argued May 6, 1886. Decided June 17, 1886.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*Gibson & Parkinson* and *Hammond, Barkworth & Cobb,* for appellants.

*Conely, Maybury & Lucking,* for plaintiff.

SHERWOOD, J. John S. Hurd, on the twenty-third day of December, 1871, resided in the city of Jackson, where he had lived many years previous thereto, and was possessed of a large amount of real and personal estate. His family at that time consisted of his wife, Sally Hurd, and four children, whose names were L. C. Hurd, Adeline L. Smith, Sarah J. Emmons, and William B. Hurd.

On that day he made his last will, which reads as follows :

" In the name of God, Amen : I, John Smith Hurd, of the township of Blackman, in the county of Jackson, in the State of Michigan, being of sound mind and disposing memory, do hereby make and execute this, my last will and testament, as follows, to wit:

" *First.* I give, devise, and bequeath unto my beloved wife, Sally Hurd, for and during the term of her natural life, the store and four-story building, with the appurtenances, in the 'Hurd House Block,' in the city of Jackson, in said county, bought by me of John Bauer, and known as number — Main street; together with all the rents, issues, and profits thereof during said term. I further give and bequeath unto the said Sally Hurd the interest, to be paid yearly by my executors at the highest rate received by them upon securities belonging to my estate, upon the sum of ten thousand dollars, which they are to set apart for that purpose ; and

---

[1] See *Galbraith v. Fleming*, 60 Mich. 408, where it is held that the statutory action of ejectment is *alone* available to the widow *prior* to the assignment of her dower, and that her assignee cannot bring such action under How. Stat. § 7344, but that *after* such assignment it becomes transferable, like other *life* estates.

if she shall request it, she shall be entitled to select the securities so to be set apart for her benefit from them belonging to my estate. I further give and bequeath unto the said Sally Hurd the said principal sum of ten thousand dollars, whenever she shall elect to receive the same, or part or parts thereof; and while I do not in any way limit her in disposing of such securities, or the proceeds thereof, I request that, in the case of the thorough reformation of our son William B. Hurd, the said securities, or the principal part thereof, be assigned or bequeathed for his benefit, and that of his heirs, but not to the prejudice of the provision as to a certain annual income for the said Sally Hurd. These provisions for the said Sally Hurd are to take effect in the case of her election to receive the same in lieu of dower of my real estate, and not otherwise.

"Second. I give, devise, and bequeath unto my son L. C. Hurd, and my daughter Adeline Smith, the said store and building bought of John Bauer, with the land and appurtenances thereunto belonging, from and after the decease of the said Sally Hurd; they to be severally seized from the time of my decease with equal undivided interest and estate in the said remainder, which remainder is so devised as a part to each, the said L. C. Hurd and Adeline Smith, of the portions intended for them respectively.

"Third. I give, devise, and bequeath unto my daughter Sarah J. Emmons the real estate and store owned by me in the said city of Jackson, known as number — Main street, and being in the Empire block, in the said city, together with all the appurtenances thereunto belonging, which real estate is devised to the said Sarah J. Emmons as a part of the portion intended for her.

"Fourth. I give, devise, and bequeath unto my executors, hereinafter named, or who may be appointed, all the rest, residue, and remainder of my real and personal estate, rights in equity, and choses in action, of which I may die seized, possessed, or entitled to; and I authorize and empower my said executors to sell, dispose, or lease my real estate, not herein specifically disposed of, as they may judge to be for the best interests of my estate, which sales may be public or private, with or without notice, for cash or on time, and evidenced by such contracts, deeds, or other instruments as to said executors shall seem meet; to invest the proceeds of such sales, and to reinvest the same, the proceeds of my personal estate, according to their best judgment; to execute instruments in writing, under seal or otherwise; and to do other

lawful things which shall or may be by them deemed necessary or expedient to accomplish my purposes as testator, declared herein, or to enable them to execute the special trusts, in accordance with which they are to hold such real and personal estate and possess such powers; which gift, devise, and bequest to my said executors is in trust, for the purpose of making the following disposition of the entire residue and remainder of my said estate; and I do hereby order and direct the execution of such trust as follows:

"*First.* That my said executors, as soon as conveniently may be after my decease, convert such entire remainder of my real and personal estate into money or interest-bearing securities, which shall be first liens on real estate or other first-class securities.

"*Second.* That my said executors, without any unreasonable delay, pay all my just debts and funeral expenses.

"*Third.* That they set apart specifically, and as the said Sally Hurd may, if she chooses so to do, select, securities to the amount of ten thousand dollars, the annual interest collected upon which shall be regularly paid to the said Sally Hurd in accordance with the directions hereinbefore given; and in the case that the said Sally Hurd shall, at any time, elect to receive such securities, or any part or parts thereof, or in the case that she shall dispose of the same, or any part thereof, by a last will and testament, then my said executors are to deliver and assign such securities, or part or parts thereof, to the said Sally Hurd, or as she shall determine and direct; but if she, the said Sally Hurd, shall depart this life intestate, and without receiving such securities, or giving any directions as to the same, then such, or such portion thereof as remains undisposed of by her, shall belong to the residue and remainder of my said estate, and be disposed of as I hereinafter direct.

"*Fourth.* That my said executors set apart specifically other securities to the like amount of ten thousand dollars, the annual interest upon which shall be expended yearly, so far as may be necessary, to pay for the board and clothing of my son William B. Hurd, and, in case of his marriage, for the board and clothing of his wife, and of any children which may be born unto them. In the case that the said William B. Hurd shall, at the time of his decease, leave a widow and child or children, the like expenditure shall continue to be made for her and their benefit, so ong as she lives or remains a widow; and if he shall leave a widow without a child or children, she shall be entitled to the benefit of such expenditure for board and clothing while she remains a widow, and no longer. In the case that the said William B. Hurd shall become engaged in any permanent and regular business, and come to possess steady habits, I order and direct that, during the time that such business and steady habits shall continue, the interest which my executors may be able to obtain on such sum of ten thousand dollars be paid to him regularly, instead of being expended specifically for his board and clothing and that of any family which he

may have. If any surplus shall remain out of such yearly interest, after providing for his board and clothing, and that of his family, as herein directed, the same shall be invested by my executors, and added to the said sum of ten thousand dollars, to be set apart as aforesaid for his benefit; and any accumulations so made shall be deemed a part of the principal sum set apart for such purpose. On the decease of the said William B. Hurd, and the decease or remarriage of his widow, if he shall have one, I order and direct the distribution of such principal sum of ten thousand dollars, with any accumulation or addition which may have been made to the fund, to the heirs at law of the said William B. Hurd at the time of his decease. No part of such sum, except arrears of annual interest not added to the principal in former years, shall be deemed to belong to the estate of the said William B. Hurd at the time of his death. In the case of the serious illness of the said William B. Hurd, or of any member of the family which he may have, my executors are directed, in addition to what they may judge necessary for board and clothing, to expend out of said interest the sums which may be needed to procure medicines and medical attendance while the sickness may continue.

" *Fifth.* That my said executors provide and pay for the care, custody, and education of my adopted daughter, Katie Hurd, according to what might be her reasonable expectations as a member of my family, until she shall arrive at the age of twenty-one years, and then that they pay to her in money, or first-class securities, the sum of three thousand dollars, without any diminution on account of expenditures made for her benefit before arriving at that age.

" *Sixth.* That my said executors pay in money to William P. Emmons and J. S. Emmons, sons of my said daughter Sarah J. Emmons, and to Irene Smith and Georgy Smith, daughters of my said daughter Adeline Smith, respectively, the sum of one thousand dollars each, as they shall severally arrive at the age of twenty-one years.

" *Seventh.* That my said executors divide and distribute equally the entire balance, residue, and remainder of my real and personal estate, share and share alike, to my said son L. C. Hurd, and my said daughters, Sarah J. Emmons and Adeline Smith; but they shall reserve from such distribution such sums and securities as they shall judge necessary to be held in order to enable them to carry this instrument into full effect, and shall make a second distribution when able so to do, and, in making such distribution, they shall take into consideration the real estate herein specifically devised, according to its value and the times of receiving the same; or, if the said Sally Hurd shall be then living, the value of the remainder devised of the Bauer store shall be estimated according to the reasonable expectation as to her life, as shown by approved tables of mortality. It is contemplated by me that the entire estate be converted into cash, or first-class securities, previous to said distribution; but this is not positively required, except so far as may be necessary to provide the funds and pay the charges and legacies (other than those to the residuary legatees) herein provided for.

"*Eighth.* That in the case that any person who would be entitled to any legacy or provision hereinunder shall depart this life before becoming so entitled, his or her heirs shall be equally entitled to the benefit and advantage thereof, except that in the case of the decease of the said Katie Hurd, before arriving at the age of twenty-one years, the legacy intended for her shall,except she leave heirs of her body, lapse, and go into the residue and remainder of my said estate.

"*Ninth.* That my said executors consider and treat any indebtedness, secured or unsecured, due or owing from them or either of them to me at the time of my decease, like other securities belonging to my estate; but whenever they shall wish to pay and cancel or discharge the same, the fact of payment shall be shown by proof before the probate judge of the county of Jackson for the time being, and his certificate or order shall be sufficient authority to cancel or discharge the same.

" *Fifth.* I do hereby nominate and appoint my son L. C. Hurd, and my son-in-law Frank L. Smith, to be executors of this, my last will and testament ; and in case either of them shall die, shall refuse to act, shall fail to give the proper bonds which may be required of him, shall become bankrupt, or in any way unfit or incompetent, or shall resign the trust, then the surviving or remaining executor shall be sole executor hereof ; and if the place of such sole executor shall, for like reasons, become vacant, the vacancy shall be filled by the appointment by the probate court of one or more executors on the application of any person interested in my estate.

" *Dated December 23, 1871.* J. S. HURD."

Shortly after the will was made, the wife, Sally Hurd, died; and, on the thirtieth day of December, 1876, the testator married the plaintiff, and they continued to live together as husband and wife until he died, on the seventh day of August, 1880.

The will was admitted to probate in the county of Jackson on the thirteenth day of September, 1880, and letters testamentary were duly executed and granted to the executors named in the will, who immediately entered upon the discharge of their duties, and have since continued in such discharge.

The usual inventory was duly made and filed, including all the estate, both real and personal, and which was soon thereafter taken possession of by the executors.

Shortly after the death of John S. Hurd, on the sixteenth day of August, 1880, and before the probate of the will, his four children, above named, made the following agreement :

" Whereas, John Smith Hurd, late of the city of Jackson, in the county of Jackson and State of Michigan, departed this life at said city of Jackson on or about the seventh day of August, A. D. 1880, leaving a last will and testament, or an instrument in writing purporting to be his last will and testament, which said instrument is now on file in the probate court for the county of Jackson, and for the proof and allowance of which petition has been made, and an order for the hearing of the same by the said probate court;

" And whereas, the said instrument, purporting to be such last will and testament, was made when the *first* wife, and mother of *all* the children of said John S. Hurd, was living;

" And whereas, since the making of said instrument, the said *first* wife of said John S. Hurd has died, and the said Hurd has left as his widow his *second* wife;

" And whereas, by the terms of said instrument, a large share of the bequest therein made to William B. Hurd is dependent upon a life-interest therein bequeathed to the said first wife of said John S. Hurd, by the death of whom, prior to the decease of the said John S. Hurd, it is feared that said bequests and devises to said William B. Hurd have lapsed ;

" And whereas, we, his children and heirs at law, are fully convinced that, by the change of circumstances since the making of said instrument, the same does not express the real wishes, intent, and design of the said John S. Hurd at the time of his decease, and that as to us, his said children, he had intended, while living, to make a new and different disposition of his property ; and believing the same to be unjust towards the said William B. Hurd :—

" We do hereby, in consideration of the premises, and of our mutual love and affection for and towards each other; and in further consideration that the said William B. Hurd shall not resist the probate of said will ; and in consideration of the mutual promises, covenants, and agreements herein contained, — mutually, between ourselves, each to each, covenant, promise, and agree that if the said instrument shall be admitted to probate as the last will and testament of said John S. Hurd, deceased, we will, and we do hereby mutually, each to each, waive the provisions in said will, and the bequests and devises to each of us therein contained ; and do hereby release to each other all of our respective claims and demands in and to the estate of said deceased, and of every part thereof, under and by virtue of the said will.

" And we do hereby mutually covenant, promise, and agree, to and with each other, that after the payment and satisfac-

tion of all the debts and claims against the said estate, and the payment and satisfaction of the legacies therein mentioned, or the security of payment thereof, we shall and will distribute, partition, and divide the rest and residue of said estate, whether real or personal, belonging to us, or to any one of us, or to which we, or any one of us, may or shall be entitled, equally among ourselves, share and share alike, as if the said instrument, purporting to be such last will and testament, had not been made, and the said property and estate had descended to us as heirs at law, or we had become entitled thereto as distributees thereof, by virtue of the statute in such case made and provided.

"And we do hereby jointly and severally authorize and empower the executor or executors of said will, or the administrator or administrators of said estate with the will annexed, in case of the probate of said will, to carry out and execute, in the distribution of said estate, the provisions of this agreement, as between ourselves, and to make division and distribution accordingly, as if the provisions of this instrument were fully incorporated into, and constituted a part of, said last will and testament, and they were by such will duly authorized, empowered, and directed so to do; it being the intention to take whatever is bequeathed or devised to each or any of us, and make a common fund or property, to be afterwards equally divided among us, share and share alike.

"And we do expressly promise and agree to make, execute, acknowledge, and deliver, each to each, good and sufficient deeds of conveyance necessary to carry out a just and equal partition and division of all the real estate which may be partitioned or divided among us, or to which any of us may be entitled, under and by virtue of this agreement.

"In witness whereof we, William B. Hurd, Mary A. Smith, named as Adeline Smith in said will, Sarah J. Emmons, and L. C. Hurd, children and heirs at law of said John S. Hurd, deceased, being the persons hereinbefore referred to as entering into this agreement, have hereunto set our hands and seals this sixteenth day of August, in the year 1880.

"William B. Hurd. [Seal.]
"Mary A. Smith. [Seal.]
"Sarah J. Emmons. [Seal.]
"L. C. Hurd. [Seal.]

"Executed in the presence of
  "Frank N. Wood,
  "J. A. Parkinson."

In the will an adopted child (Katie Hurd) is mentioned, and given a legacy of $3,000, and by the terms of his will was to be regarded as a member of his family until she arrived at twenty-one years of age, which did not occur until the twentieth day of April, 1883.

While the negotiations were pending among the children of the decedent, which resulted in making the contract of August 16, 1880, the plaintiff knew that some arrangement was being made between them in regard to the property, but the exact character of the same she did not know, and she did not participate in the same.

About the time the above negotiations were going on among the heirs, or very soon thereafter, an interview was had between the plaintiff and the children of John S. Hurd and the executors of his estate, as to the policy of paying the debts of the estate as soon as possible, and as to the amount which should be paid by the estate for the maintenance and support of the plaintiff, and the adopted child, Katie Hurd, and it was agreed among the children, and approved by the widow, that the debts of the estate should be paid as speedily as possible, and agreed between them all that the plaintiff and Katie should have sixty dollars per month for their maintenance and support; and, in accordance with such understanding and agreement, the judge of probate, on the thirteenth day of September, 1880, entered the following order:

"*In the Matter of the Estate of John S. Hurd, Deceased.*

"Upon the application of Emily M. Hurd, widow of said deceased, and after a careful examination and hearing had thereon, it is ordered that an allowance of sixty dollars per month be and is hereby made for the support of the widow and Katie Hurd, the adopted child of said deceased, until the further order of this court."

The plaintiff has resided in Michigan ever since the death of John S. Hurd, and his executors continued to pay to her, until after this suit was commenced, the sixty dollars per month agreed upon and mentioned in said order, and have, since the commencement of the suit, paid to Katie Hurd her legacy.

Since the time said order of the probate court was made the executors have used the greater part of the income of the estate in paying to the widow her allowance, and the debts of the estate, and in making some repairs and improve ments upon its property. The plaintiff knew all the time of such use, and never objected to the same ; never asked or demanded any further sum for her support ; often requested an early settlement of the estate; and never asked that her dower be assigned to her until a few days before this suit was brought, and not until the executors filed an account with the judge of probate of their management of the estate, and in which they charged themselves with the income of the estate, and credited themselves with the debts paid, together with the amounts so laid out in repairs and improvements on the estate.

Some of the real estate belonging to said estate when John S. Hurd died, was incumbered by mortgages, in all exceed-ing the sum of $20,000 ; and all of the mortgages were executed by him and his wife, the plaintiff, except one for $800, which he assumed to pay as part of the purchase price of one parcel of the land. All of said mortgage indebted-ness was that of the husband, John S. Hurd.

The real estate described in the declaration constitutes only a part of that belonging to the estate, and, at the death of the testator, was incumbered by mortgage to the amount of $3,200, payable in three years from the twenty-third day of November, 1877, with interest at nine per cent.; and the executors paid upon said mortgage previous to the commence-ment of this suit $971.12 interest, and $1,200 principal.

On the eighteenth day of March, 1884, the plaintiff was married to Edward P. Burrall. Subsequently she demanded of the executors that they should set out her dower to her in the premises. This demand was not acceded to, and, at the same time, they declined to recognize her claim of dower unless she would allow thereout the sixty dollars per month paid to her up to the time of her demand, and also one-third of the amount of the mortgage. She has also made demand

for her monthly allowance since she commenced suit, which was brought on the twenty-fourth day of February, 1885.

The foregoing is the substance of the facts found by the circuit judge, who tried the cause without a jury; and upon which he further found, as matter of law, the plaintiff entitled to recover possession of an undivided one-third part of the premises described in the declaration as her reasonable dower therein, and entered judgment accordingly. The defendants bring error.

The case comes before us on the findings. None of the testimony, except that embraced in the findings, is contained in the record. Whether these findings are supported by the testimony or not, cannot be considered upon this record.

It is claimed in the brief of counsel for defendants, and does not seem to be disputed by plaintiff's counsel, that no personal property was left out of which to pay off the mortgage indebtedness. It could therefore be liquidated only out of the real estate, and the rents and profits therefrom.

At the time the plaintiff brought her suit there was then owing and due upon the mortgage upon the premises in which the plaintiff seeks to be endowed, over two thousand dollars, $1,200 having been previously paid by the executors; and the plaintiff claims that she should be endowed in the mortgaged premises irrespective of, and without regard to, this mortgage.

The defendants contend that, under the findings, the plaintiff is estopped from bringing this suit; that her understanding or approval of, and tacit acquiescence in, the agreement between the heirs, that no division of the property should be made until after the debts are all paid, should be held binding upon the plaintiff, but if this should be held otherwise, the judgment is still wrong; that the plaintiff cannot take her dower in the mortgaged premises exonerated from the lien; that the statute requires her to bear her reasonable portion of the burden of the incumbrance.

The issue thus formed between the claims of the respective parties raises the real question in the case.

I do not think what the findings show, upon the subject of

estoppel, sufficient to preclude the plaintiff from taking any proper action to recover whatever dower interest she may have in her husband's real estate. It may have an important bearing, however, in any claim made for mesne profits since the death of her husband.

The plaintiff was decedent's second wife. The husband did not die intestate as to any part of his estate. He disposed by his will of all the estate he had. He made provision for the wife then living, but never afterwards, it would appear, made any provision for his second wife. The plaintiff's rights, therefore, are those, and only those, secured to her by the statute; and her relations to the estate, and her interest therein, are just the same, so far as dower is concerned, as they would have been had her husband died intestate.

The heirs and legatees, and all other persons having claims to the estate, except creditors, derive the same under the provisions of the will. The plaintiff derives hers under the statute, and her interests are in the lands, and limited to those whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she has lawfully barred herself thereof. As to lands mortgaged before marriage, or for purchase money, she is entitled to dower, as against all persons except mortgagees, and those claiming under them. And in those cases, as well as in those where she has joined in the mortgage, a dower right is secured to her in any surplus that may be realized on a sale by foreclosure. The several provisions of the statute bearing upon the case in the record will be found in sections 5735 to 5738, both inclusive, of Howell's Statutes.[1]

[1] "Sec. 5735.—When a person seized of an estate of inheritance in lands shall have executed a mortgage of such estate before marriage, his widow shall be entitled to dower out of the lands mortgaged, as against every person except the mortgagee, and those claiming under him.

" Sec. 5736.—When a husband shall purchase lands during coverture, and shall at the same time mortgage his estate in such lands to secure the payment of the purchase money, his widow shall not be entitled to dower out of such lands, as against the mortgagee, or those claiming under him, although she shall not have united in such mortgage, but she shall be entitled to her dower as against all other persons.

" Sec. 5737.—When, in either of the cases mentioned in the two last pre-

The plaintiff's right, and the extent thereof, depend entirely upon the construction to be given to these sections of the statute.

In this case the plaintiff joined in the execution of the mortgage with her husband. There can be no question, therefore, but that the dower interest, whatever it is, is subject to the mortgage; and, in determining that interest, the amount owing upon the mortgage at the decease of the testator is the sum to be taken into consideration.

We find nothing in the findings, or in the record, showing the value of the premises in which dower is claimed, and which are covered by this mortgage. In no event could the plaintiff, under the statute, be endowed to a greater extent than the one-third of the value of the excess of the land, after deducting the amount owing upon the mortgage: How. Stat. § 5738; *Snyder v. Snyder*, 6 Mich. 470; *Newton v. Sly*, 15 Id. 391; *Campbell v. Campbell*, 21 Id. 453; *Bemis v. Conley*, 49 Id. 392.

The plaintiff cannot claim any benefit whatever from the will; neither are her rights in any manner affected by it. And the heirs had a right to make just the arrangement they did as to what should be done with the property, and how it should be managed, and how the debts should be paid; and the law rather encourages than disparages such arrangements among heirs; and it was entirely competent and proper for the plaintiff to appear and participate, if she desired, in the efforts of the heirs to accomplish whatever they wished to in that direction.

The doctrine of equitable conversion has nothing to do

ceding sections, or in case of a mortgage in which she shall have joined with her husband, the mortgagee, or those claiming under him, shall, after the death of the husband, cause the mortgaged premises to be sold by virtue of such mortgage, and any surplus shall remain after payment of the moneys due thereon, and the costs and charges of the sale, such widow shall be entitled to the interest or income of one-third part of such surplus, for her life, as dower.

"Sec. 5738.—If, in either of the cases above specified, the heir, or other person claiming under the husband, shall pay and satisfy the mortgage, the amount so paid shall be deducted from the value of the land, and the widow shall have set out to her, for her dower in the mortgaged lands, the value of one-third of the residue after such deduction."

with the questions involved in this case. It is simply the case of a widow seeking to be endowed in the mortgaged lands of her deceased husband, and who has accepted other means of support, in lieu of mesne profits, until dower assigned. I think that is the correct statement of the case, and shows the precise relation of the plaintiff to the property mentioned in the declaration, at the time her monthly allowance was agreed upon, and the order made in pursuance thereof by the judge of probate.

The personal estate seems to have been sufficient to pay the indebtedness of the estate, except what was secured by mortgage. The ownership of the real estate, under the will, vested in the legatees as soon as the will was admitted to probate, and the rents and profits belonged to them from that time forward, and became their individual property, subject only to such interest as the plaintiff might have, if any.

The plaintiff's right to be endowed, if at all, in the mortgaged property, was confined to the equity of redemption; and whether she had any dowable interest depended entirely upon the value of the land, over and above the amount owing upon the mortgage. How. Stat. § 5738. No such excess is shown by the findings, nor does it appear elsewhere in the case.

There was no occasion for the executors to accumulate a fund, after the payment of the legacy to Katie Hurd, so far as the record shows and the plaintiff's rights are concerned. The circuit judge finds that the monthly allowance of the plaintiff, " by the common consent of the plaintiff, the children, and executors," was paid to her until after the suit was commenced.

The action taken by the persons named as executors, under the agreement entered into between the heirs, dated August 16, 1880, was not taken by them as executors, but for themselves, and as agents for the other heirs; and in that capacity they have taken the rents and profits of the land, and as such agents for said children have paid whatever has been applied to the redemption of the mortgage indebtedness; and to the extent that such indebtedness has been liquid-

ated the heirs are entitled to claim all the rights of assignees
of the mortgagee, as regards the dower interest of the
plaintiff.

Up to the time of the commencement of this suit, the case
stood no differently from what it would had the reduction
of the mortgage indebtedness been made from moneys ob-
tained from the heirs' private means instead of the rents of
the mortgaged land.

The mortgage was a lien upon the whole property men-
tioned in the declaration, and was paramount to the dower
interest, the plaintiff having signed the mortgage.

The plaintiff claims she is entitled to dower in the whole
premises, without any reduction on account of the mortgage,
and the circuit judge so held in rendering the judgment he
has in the case. This is erroneous. The section of the
statute last above cited, I think, clearly applies to the case
made by the record.

The amount of the mortgage at the time of the death of
John S. Hurd should be deducted from the whole value of
the mortgaged premises, and the plaintiff's dower should be
set apart in the residue; and the commissioners should be
instructed that, in setting off the dower, they should set apart
to the plaintiff, after ascertaining the whole value of such
residue, land in value to the amount of one-third thereof.
This may all be done in the action of ejectment to recover
dower. Dower is not required to be set off before bringing
ejectment, under our law. The statute authorizes all the
proceedings necessary under such circumstances for the
endowment of the widow. See statutes cited, and How.
Stat. § 7845;[1] *Snyder v. Snyder*, 6 Mich. 470.

In the view I have taken of the effect of the action on the

---

[1] Sec. 7845.—"If an action be brought to recover the dower of any
widow which shall not have been admeasured to her before the com-
mencement of such action, instead of a writ of possession being issued,
such plaintiff shall proceed to have her dower assigned to her in the man-
ner following:

"1. Upon the filing of the record of judgment, the court, on the motion
of the plaintiff, shall appoint three discreet and disinterested freeholders
commissioners, for the purpose of making admeasurement of the dower
of the plaintiff, out of the lands described in the record; and the commis-
sioners so appointed shall proceed in like manner, possess the like powers,

part of the plaintiff in agreeing to the allowance which should be made to her in the order of the judge of probate, and her approval of the heirs or legatees paying the mortgage indebtedness, I am not able to agree with the learned counsel for the plaintiff, neither am I in accord with my brethren.

They do not think that it sufficiently appears by the record that the plaintiff, by agreement with the heirs, gave up her right in the mesne profits, and accepted in lieu thereof said allowance made to her, until the mortgage indebtedness was paid ; but hold that, subject to the amounts paid to her for support under the order, and one-third of the amount paid necessary to liquidate the mortgage, she should be fully endowed in the lands of her husband, and that she should have the benefit of the mesne profits to make the payments required of her upon the incumbrance.

This would be, in my judgment, clearly right, if the allowance agreed upon was not to be received by the plaintiff in lieu of mesne profits. A finding should have been made upon this subject by the circuit judge so explicit as to be, beyond question, what was intended by the parties to the arrangement. However, it can make no difference as to which conclusion is correct upon this record, inasmuch as a new trial is made necessary under either construction of the arrangement. The fact, however, will become important, should a new trial be had, in determining what judgment should be rendered, and in taking the necessary action required by commissioners in the discharge of their duty in setting off the dower, if awarded.

The plaintiff cannot insist upon the enforcement of any of the provisions of the will. It was not made for her, or to

and be subject to the like obligations as commissioners appointed by the judge of probate to set off dower. (See How. Stat. §§ 5740–2.)

"2. The commissioners shall make a report of their doings to the court, in writing, as soon as may be after their appointment, which report shall be confirmed by such court, unless good cause to the contrary be shown; and shall be entered at large in the minutes of such court.

"3. Upon the confirmation of the report of the commissioners, a writ of possession shall be issued to the sheriff of the proper county, describing the premises assigned for the dower, and commanding the sheriff to put the plaintiff in possession thereof."

subserve any of her interests. She can take only what the statute gives her, and is confined to its provisions.

It is necessary that all facts required for consideration by the court, to enable it to render such judgment in the premises as will furnish a correct basis for such instructions as are essential to be given to the commissioners for the proper discharge of their duty in setting off dower, should, in some manner, be made to appear, and the judgment should contain a clause laying the proper foundation for such instructions.

The judgment must be reversed, and a new trial granted. Defendants will recover costs. In this opinion I have treated the mortgage incumbrance as fully paid, as no question was made upon the argument but that it will be, under the agreement made between the heirs.

The other Justices concurred.