[No. 4803.]

THE ESTATE OF KLIPFEL, DECEASED, ET AL. v. KLIPFEL.

1. Marriage—Common-law Marriage—Consent—Solemnization.

Marriage is declared to be a civil contract by the Colorado statutes, and, therefore, a marriage contract between parties capable of contracting, possessing clearly the one essential prerequisite of mutual consent, followed by cohabitation as husband and wife, and such other attendant circumstances as are neces-

sary to constitute the common-law marriage, may be valid and binding although no solemnization as provided by statute may have been attempted.—P. 45.

2. Same—Proof.

Where a common-law marriage is denied, its existence may be proved and presumed from evidence of cohabitation as husband and wife and from general repute.—P. 46.

3. Same—Cohabitation.

Cohabitation necessary to establish a common-law marriage must consist of a living or dwelling together in the same habitation as husband and wife, and not merely a sojourning or a habit of visiting or remaining together for a time with sexual intercourse.—P. 46.

4. Same—General Repute.

General repute as to the marital relation, to establish common-law marriage, means the understanding among neighbors and acquaintances with whom the parties associate in their daily life, that they are living together as husband and wife, and not in meretricious intercourse; it is more than mere hearsay; it involves and is made up of social conduct and recognition of an admitted and unconcealed cohabitation; and it is necessary that there be evidence of both cohabitation and reputation before such a marriage can be presumed, as proof of one alone is not sufficient to sustain the presumption.—P. 46.

5. Same—Evidence—Cohabitation—Presumption.

Cohabitation, attended by other facts, is merely a circumstance from which a marriage in fact may be presumed, so that, where facts are proved from which a contrary presumption arises, all former evidence falls or is neutralized; and one of the essential obligations of a valid marriage contract is that it binds the parties to keep themselves separate and apart from all others and cleave to each other during their joint lives.—P. 47.

6. Same—Evidence—Instructions.

Where intestate had lived in a meretricious relation with petitioner prior to the death of his wife, and thereafter was not constant in his attendance on petitioner, but simultaneously cohabited with a third person under like repute, the presumption is that the meretricious relation with petitioner continued, and that there was no agreement to marry, followed by cohabitation, sufficient to establish a common-law marriage, since there could not be two common-law wives existing at the same time; and the court erred under such facts in instructing that "slight circumstances may be sufficient to establish a change from an illicit

to a legal relation, and the proof of its time and place is not indispensable."—P. 47.

**7. Same.**

Where the issue is in regard to the existence of a common-law marriage, and the evidence shows that the intercourse between the parties at its inception was not only meretricious but intentionally criminal, the continuance of like intercourse must be presumed until the contrary is shown; and, where it is sought to establish the presumption of marriage by cohabitation and repute, the marriage contract must be established by convincing and positive evidence.—P. 48.

**8. Same—Instructions.**

On an issue as to the validity of a common-law, marriage, a request to charge that, if it was proven that intestate was cohabiting with a third person under like repute, the presumed innocence of either cohabitation with such person or petitioner must fail for the reason that it is impossible for two marriages to exist together, was improperly refused.—P. 49.

**9. Same.**

On an issue as to the validity of a common-law marriage, while the evidence showing that the deceased had lived in a meretricious relation with petitioner prior to the death of his wife, and that they cohabited for about eight years thereafter without taking any steps to have the statutory ceremony performed, and that the deceased cohabited with a second party during the same period, and by equally competent and undisputed evidence was reputed to be married to her, may not be conclusive proof, it is certainly the strongest kind of evidence to show that deceased at least had no intention to live in a matrimonial union with petitioner.—P. 51.

**10. Appellate Practice—Verdict—Conclusiveness.**

Where, on an issue as to the validity of a common-law marriage, the evidence was not conflicting, and was insufficient to meet the requirements of the law to support a contract of marriage, a verdict finding a valid marriage is not binding on the appellate court.—P. 51.

*Error to the County Court of the City and County of Denver.*

*Hon. Ben B. Lindsey, Judge.*

Petition by Minnie Klipfel in the matter of the estate of Louis Klipfel, deceased, to establish her marriage to decedent and her right to share in his

estate as his widow, in which are joined as respondents Frank Klipfel, former administrator, and Henry J. Ott, administrator *de bonis non*. From a judgment for petitioner, respondent Ott brings error.

· *Reversed and remanded with instructions.*

Mr. JOHN RUSH and Mr. FRED PARKS, for plaintiff in error.

Messrs. WARD & WARD, for defendant in error.

Mr. JUSTICE CASWELL delivered the opinion of the court:

On June 21, 1901, *Marie* Klipfel filed a petition for letters of administration of the estate of Louis Klipfel, deceased, in the county court of the city and county of Denver, claiming to be his widow.

On June 22, 1901, *Minnie* Klipfel filed her petition for letters of administration of the estate of said Louis Klipfel, deceased, in said county court, also claiming to be his widow.·

On July 5, 1901, both parties with others, presumably heirs, waived their claims to be appointed administrator of the estate, in favor of Frank Klipfel. On September 17, 1901, Frank Klipfel resigned and Henry J. Ott, plaintiff in error herein, was appointed administrator *de bonis non* of the said estate.

Further proceedings in this case in the county court were had, as shown by the abstract of record, upon a verbal statement of the attorney for Minnie Klipfel, defendant in error, named in the record as petitioner in the court below, against the plaintiff in error who is named as respondent, the statement being as follows:

"So that we may have a record of what this proceeding is, this is a preliminary matter to enable the court to determine whether or not the petitioner

herein was or was not the wife of Louis Klipfel, deceased. That is the only question to be tried before the jury at this time. There are no pleadings in the matter.''

We infer that the claim of petitioner that she was the widow of the deceased was considered to have been denied, and that the statement with such denial makes up the issue in the case upon which the testimony was received. Trial was had to a jury. There was a verdict and decree for petitioner, and respondent brings the case to this court by writ of error.

It appears from the testimony that the petitioner claimed to be the common-law wife of Louis Klipfel in his life time. There was no marriage ceremony or any express contract of marriage shown by the record, and petitioner apparently relies upon an implied contract.

It is established by the record, and undisputed by the defendant in error, that prior to 1889 Louis Klipfel came to Denver with his then wife, with whom he lived at 25th and Gilpin streets in said city until her death, Sept. 7, 1893; that in 1889 the petitioner, then known as Minnie Kimmel, came from Germany and entered the home of Louis Klipfel as a servant girl, where she remained as such until the death of Mrs. Klipfel in 1893; that in 1892 and prior to the death of Mrs. Klipfel, a child was born to this servant girl as a result of her illicit and immoral relations with Louis Klipfel, and that the child was recognized by Louis Klipfel as his own and that he cared for and supported her. It is clearly shown by the record that at the origin of such intercourse Minnie Klipfel well knew that the same could not have been carried on between herself and Louis Klipfel with any intention of marriage or under

promise of marriage relations, Klipfel's wife then and for a long time thereafter being alive.

Louis Klipfel died in 1901 in the city of Denver. Considerable testimony was introduced at the trial to show his relations with the petitioner between the date of the death of his wife in 1893, and of his own death in 1901. There was also much testimony introduced to show his relations with *Marie* Klipfel, so called, during the same years. This evidence as stated by respondent was offered to show a divided reputation, while the court instructed the jury that it was received to show the residence of Klipfel during that time. The respondent contends that the testimony as a whole does not prove or tend to prove that either of the women mentioned was the wife of deceased, and that neither of them can participate in the estate. We think this contention is correct and fully sustained by the testimony, but the rights of *Marie* Klipfel, so called, are not involved in this decision and the testimony concerning her relations with deceased is only considered to disprove the claim of petitioner.

Defendant in error claims that the jury passed upon the merits of the testimony and found as a fact, under proper instructions, that the petitioner was the common-law wife of deceased and that the verdict should not be disturbed.

In *Taylor v. Taylor,* 10 Colo. App. 303, the court had under consideration a case involving a question similar to the one in hand. We think the rule laid down in that case is supported by the weight of authority and is a correct statement of the law. The court in that case says:

"By the statutes of Colorado, marriage is declared to be a civil contract and there is only one essential requirement to its validity between parties capable of contracting, viz: consent of the parties.

\* \* \* It follows, therefore, that a marriage contract between parties of contracting capacity which possesses the one essential prerequisite may be valid, although no provision of the statute as to its solemnization may have been followed or attempted. In other words, in this state a marriage simply by agreement of the parties, followed by cohabitation as husband and wife, and such other attendant circumstances as are necessary to constitute what is termed a common-law marriage. may be valid and binding. \* \* \*

"It is also agreed that in cases where the contract or agreement is denied and cannot be shown, its existence may be proven by and presumed from *evidence of cohabitation as husband and wife and general repute.* Cohabitation as here used means something more than sexual intercourse."

Quoting from *Yardley's Estate,* 75 Pa. St. 211, the court further says: "It is not a sojourn, nor a habit of visiting nor even remaining with for a time. None of these fall within the true idea of cohabitation as a fact presumptive of marriage. To cohabit is to live or dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell with him."

By general reputation and repute is meant the understanding among the neighbors and acquaintances with whom the parties associate in their daily life, that they are living together as husband and wife and not in meretricious intercourse. "In its application to the fact of marriage it is more than mere hearsay. It involves and is made up of social conduct and recognition, giving character to an admitted and unconcealed cohabitation."—*Badger v. Badger,* 88 N. Y. 556. "It is necessary that there be evidence both of cohabitation and reputation before

such a marriage can be presumed. Proof of one alone is not sufficient to sustain the presumption."
—*Commonwealth v. Stump,* 53 Pa. 132.

In *Case v. Case,* 17 Cal. 598, the court said:

"Cohabitation attended with other facts is merely a circumstance from which marriage in fact may be presumed, but where facts are proved from which a contrary presumption arises, all former evidence falls or at least is neutralized."

In *Riddle v. Riddle,* 26 Utah 268, the court said:

"One of the essential obligations of a valid marriage contract is that it binds the parties to keep themselves separate and apart from all others and cleave to each other during their joint lives."

Tested by the foregoing rules the evidence for petitioner was wholly insufficient to support the presumption of a marriage contract. Much of the evidence adduced to support her claim negatives such presumption. It is not our purpose to review this testimony at length, nor would such action be valuable in other cases. Some of the witnesses testify that Klipfel was accustomed to go to the house where petitioner lived from time to time during the day; that he took her to ride with the child, and some times called while his horse was held by some person who came in the buggy with him. None of the witnesses testify, nor does all the evidence tend to show, that this was his habitation day and night and that it was ostensibly constant and regular and of the character from which the general reputation follows that they were husband and wife and that a marriage contract existed between them.

Further than this, it is very clearly shown, and the evidence is not disputed, that during (and practically all) the time from the death of his wife until his own death he lived more or less with *Marie*

Klipfel, so called, at divers places but mainly at 20th and Market streets. It seems that he claimed this last place as his voting residence and that he was sick at this place and called his attorney there to do business. About twenty witnesses testify to the fact of his residence there with Marie; that he introduced her as his wife repeatedly and apparently treated her and lived with her as such. The evidence of his cohabitation and reputation of marriage with Marie is much stronger than the evidence of his cohabitation with Minnie, and we cannot escape the conclusion that his relations with both these women were meretricious, illicit and immoral. There could not be two common-law wives existing at the same time.

At § 1026, 1 Bishop on Mar., Div. & Sep., page 444, it is said: "If, on an issue of marriage or no marriage, the parties are shown to have cohabited as husband and wife under the repute of being married, as explained in a preceding chapter, and if also one of them is proved to have been simultaneously cohabiting with a third person under the like repute, the presumed innocence of either cohabitation is equivalent to the same of the other, and as it is impossible for two marriages to subsist together, neither is by this evidence established."

See, also, *Cartright v. McGowan,* 121 Ill. 388; *Riddle v. Riddle, supra;* § 1028, 1 Bishop on Mar., Div. & Sep. 445; *Jenkins v. Jenkins,* 83 Ga. 286.

The above rule is especially applicable to this case, it appearing that deceased maintained improper and immoral relations with both parties during the same period of time.

The court below erred in giving its instruction No. 4, especially in instructing the jury that "slight circumstances may be sufficient to establish a change from an illicit to a legal relation, and the proof of its

time and place is not indispensable." While such an instruction might be correct in some cases, it is, we think, erroneous under the circumstances and testimony in this case. The great weight of authority is to the effect that where the intercourse between the parties is, as in this case, in its inception not only meretricious. but intentionally criminal, the continuance of like intercourse must be presumed until the contrary is shown; and the marriage contract, where, as here, it is sought to establish the presumption of marriage by cohabitation and repute, must be established by convincing and positive evidence.—*United States v. Maxwell,* 57 N. Y. Supp. 55; *Williams v. Williams,* 46 Wis. 480; *Rose v. Rose,* 61 Mich. 619; *Arnold v. Chesbrough,* 58 Fed. 833; *Appeal Reading Ins. Co.,* 113 Pa. 208.

The respondent further requested by its fourth instruction, which was refused, that the jury be advised if it was proven that the deceased was cohabiting with a third person, known as *Marie* Klipfel, under like repute, the presumed innocence of either cohabitation must fall, for it is impossible for two marriages to exist together and neither is by such evidence established. It was error not to give this or a like instruction, and the court did not instruct upon this point as it should have done under the testimony in this case. Many other errors are assigned and discussed at length, but as the above rulings dispose of this case it is unnecessary to consider them.

We have considered the cases presented by the defendant in error with some care and do not think them applicable to the conditions existing in the case in hand. The case of *Adger v. Ackerman,* 115 Fed. 124, is the strongest case presented and includes the doctrines established by the others cited here, and

also includes them in its list of citations. We have no reason to disagree with the conclusions of the very able jurist, Mr. Justice Sanborn, who wrote the opinion, but an analysis of the case discloses that the facts and principles involved are entirely different. In that case one Dr. Fleming and a certain woman named, had illicit relations prior to the time of the divorce of the doctor from his first wife. After the divorce he continued to live with the woman and sometime after the said divorce a marriage ceremony was duly performed pronouncing them husband and wife. It was held in that case that the great weight of authority was to the effect that "slight circumstances .may be sufficient to establish a change from an illicit to a legal relation and the proof of its time and place are not indispensable." It further holds that "from a review of the facts in the case there is nothing that imperatively forbids a finding that there was a valid marriage between these parties subsequent to the divorce and prior to the time that the ceremony was performed." The decision further says:

"Yet if the case rested here this question might be grave and its answer difficult. Fortunately there is an established principle of law and a class of evidence in this record to which it applies, which removes this doubt and difficulty. The principle of law is that where parties are incompetent to marry and enter an illicit relation with a *manifest desire and intention to live in a matrimonial union* rather than in a state of concubinage, and the obstacle of their marriage is subsequently removed, their continued cohabitation raises a presumption of an actual marriage immediately after the removal of the obstacle and warrants a finding to that effect."

There are many decisions cited in support of this principle, but we cannot see how the decisions are

applicable to the case at bar. As we have said, the facts in this case clearly show that the relations between the petitioner and respondent were not entered into with any *apparently manifest desire and intention* to live in a matrimonial union. It is further claimed that they cohabited and were reputed to be man and wife for about eight years after the obstacle to their marriage was removed, and yet no step seems ever to have been taken to have a statutory ceremony performed, whereby the proof of their marriage would have been completely established. But on the other hand the deceased is shown to have also cohabited with a second party during the same period, and that he was reputed by equally competent and undisputed testimony to be married to Marie Klipfel, so called. While this may not be conclusive proof, it is certainly the strongest kind of evidence to show that *he* at least had no intention to live in a matrimonial union with the petitioner.

As marriage is a contract based upon consent, it requires the consent of both parties to the contract, and we are very clearly of the opinion that the evidence in this case does not support the presumption of such a contract.

The testimony introduced, both upon the part of the petitioner and of Marie Klipfel, as we have seen, was undisputed. The same character of testimony was received as to the claim of each. The verdict arrived at by the jury was not upon conflicting evidence and is not such a verdict as is binding upon this court. On the contrary the testimony is insufficient to meet the requirements of the law to support a contract of marriage. The case should not have been submitted to a jury at all, but we think that at the close of the testimony the proceedings should have been dismissed and the court should have directed a verdict for the respondent.

The judgment is reversed and the cause remanded with instructions to the county court to dismiss the proceedings of the petitioner herein.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.