No. 13,291.

CLAYTON COAL COMPANY ET AL. *v.* INDUSTRIAL COMMISSION
ET AL.

(25 P. [2d] 170)

Decided July 3, 1933. Rehearing denied September 18, 1933.

Mr. FRANK C. WEST, for plaintiffs in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. M. S. GINSBERG, Assistant, Mr. FRANK McDONOUGH, JR., Mr. GILBERT L. McDONOUGH, Mr. CLARENCE L. BARTHOLIC, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

ON August 9, 1932, Mike Tsikiris, an employee of the Clayton Coal Company, received accidental injuries arising out of and in the course of his employment, and died on August 11 as a result of the injuries. The Industrial Commission awarded compensation to Mary Tsikiris as his widow, and the district court affirmed the award.

It is admitted by the plaintiffs in error that if Mary Tsikiris was the wife of Mike Tsikiris at the time of his death, she is entitled to the compensation awarded to her. There was no ceremonial marriage, and the plaintiffs contend that the evidence was wholly insufficient to support the finding of the commission that there was a common-law marriage. The law of this state recognizes the validity of common-law marriages. *Klipfel's Estate v. Klipfel,* 41 Colo. 40, 92 Pac. 26.

On direct examination, Mary Tsikiris testified that she was the wife of Mike Tsikiris; that she was married to him; that there never was any real ceremony performed; that they intended to get married all along; that they

agreed to be husband and wife; that they lived together as such for five years, and were so living together when he died; that her husband (Mike) supported her, paid all of her expenses, furnished all food, and ran accounts for groceries and furniture; that Mike had never been married before; that she had been married to one Russell, but was divorced. On cross-examination, she testified that she became Mike's wife in 1927, but did not remember whether it was in the spring, summer or fall; that they just went together; that they were going to get married and it seemed they just never got to it; that there never was any later ceremony or agreement after that time; that they kept saying all of the time they were going to get married, but they did not; that they were in Denver when they commenced this relation, but she does not remember what month it was; that there was no particular reason why they did not get married; that he could not read and write, nor could she, and they just put it off; that in 1927 they moved in the camp right at the Clayton, took a house and furnished it; that Mike bought and paid for the furniture; that they set up a home and lived in the house; that up to the time that Mike died they were living together and intended at some time to get married.

Other witnesses, who were friends, neighbors and storekeepers and had known Mike and Mary Tsikiris for four or five years next prior to his death, testified that the parties lived together as husband and wife; that Mike introduced her as his wife; that he always referred to her as his wife; that everybody thought they were husband and wife; that they kept accounts at stores and she bought supplies and they were charged to the accounts. One of the witnesses boarded with them for about six months and had known both for about four years. He described in detail the household arrangements and their way of living. Another witness, at whose house they lived for about a month and who had known both for about five years, also described their domestic life.

When Tsikiris lay on his deathbed in the hospital, he made a statement to several witnesses in the presence of Mary Tsikiris. It was written down at his request. She produced it at the hearing. It is a penciled statement, signed with a mark by Tsikiris, and signed by two witnesses. It reads: "8/9/32. Riverside by Brother. 200. American National 17th Lawrence. My personal belonging car and stock goes to my wife, Mary." Mary Tsikiris and disinterested witnesses testified to the making of the statement.

The witness Morris testified substantially as follows: I saw Mike in the Longmont Hospital after he was hurt. I was there on August 9th. Mr. Tsikiris asked me for a paper and pencil and said: "Jack, I will tell you, I am going to die. Bury me in Riverside beside by brother. There is $200 at the bank, and get that for my wife. You write that all down. I want everything to go at home." He couldn't write, so made his cross and it was witnessed by Mr. Morris (Mavros) and by me. That is my signature on there. I gave the paper to Mrs. Tsikiris in Mike's presence. He referred to this woman sitting here, who just testified, when he said, "my wife, Mary" —there is no question about that. On cross-examination, the witness said, in substance: The first I knew that the deceased and the claimant were not married was when the deceased was in the hospital after his injury; Mrs. Tsikiris said to me: "Poor Mike, I suppose now then we never will be married. We have lived together all these years thinking we would be married and now we won't be able to."

The witness Mavros testified substantially as follows: I saw Mike in the hospital at Longmont. That is my signature on Exhibit 2. Mike made the cross as his signature. He said: "Paul, Paul, I am going to die; I feel pretty bad and I believe I am going to die. I want you to get this paper. You put this down what I am going to tell you. I want you to bury me in Riverside by my brother, and I have got a couple hundred dollars in the

bank, in the American National, and that belongs to my wife and my wife is going to have that and pay my funeral, but I don't want to spend so much money. All the rest of the things I got belong to my wife." And he tried to sign but he couldn't do it, so I put my arm that way and he made a cross, on my arm. Both the doctors and Mrs. Tsikiris were in the room at the time.

The witness Morrison testified substantially as follows: When I was notified Tsikiris was hurt I went over and saw Mike, and had my partner notify the mine officers and get a stretcher. Mike says, "I am going to die, Bill." And I says, "No, you are not." He said, "Yes, I am broken up pretty bad." He says, "Now, you be my witness, everything I got goes to my wife, and I got a little money in the bank and that goes to her."

In an affidavit, Dr. John Andrews stated that he attended Mike Tsikiris and was present when Tsikiris had a document drawn for the disposition of his property to his wife, who was then present; that he heard Tsikiris say he wanted the money in the bank and other personal property given to her in the event of his death; that Tsikiris was conscious and knew he would probably die from his injury. That affidavit, however, was admitted over objection. We need not rule upon the objection. It is not argued here, and the evidence is sufficient without the affidavit.

If those parts of the testimony of Mary Tsikiris to the effect that they always intended to get married but did not, and her statement to the witness Morris to the same effect, stood alone, the finding that Mike and Mary Tsikiris were husband and wife could not be sustained. But they do not stand alone. She was an uneducated woman, unable to read or write, and lacked the ability to choose words with discriminating care. Taking her testimony as a whole, it is reasonable to infer that when she said that they always intended to get married she meant, not that they were not already husband and wife, but merely that they intended to have a

formal ceremony performed some time, perhaps the better to evidence their matrimonial status, or for some other reason. ''There is * * * nothing inconsistent in fixing the status per verba de praesenti and agreeing that the marriage then constituted shall be publicly solemnized at a future day.'' 18 R. C. L. p. 392. In *Employer's Mutual Insurance Co. v. Morgulski,* 69 Colo. 223, 193 Pac. 725, the parties became engaged, and agreed that they would marry by ceremony as soon as they could get the consent of the woman's father. The commission found that they were married, and we refused to disturb that finding. In *Radovich v. Radovich,* 84 Colo. 250, 269 Pac. 22, we held that an agreement in praesenti to be now and henceforth husband and wife may be valid even though there is an agreement for a future ceremony. We called attention to the fact that there are obvious reasons why a marriage ceremony is often desirable even to those who, in contemplation of law, are already married.

The conduct of the parties was consistent with marriage and inconsistent with any relation other than that of marriage. The uncontradicted evidence of habit and repute points strongly to the conclusion that the parties were not living together in illicit relations, but were husband and wife. When Mike Tsikiris lay on his deathbed and knew that death was impending, he referred to Mary as his wife. His declaration on that solemn occasion is consistent with the entire history of their relations, is extremely persuasive, and no doubt it was given, as it should have been given, great weight by the commission.

In the circumstances, we would not be justified in disturbing the findings and award of the commission or the judgment of the district court.

The judgment is affirmed.