## No. 19,283.

IN THE MATTER OF THE ESTATE OF ARCHIE L. PETERSON,
ETC., ET AL. *v.* ELSIE LEWIS, ETC., ET AL.

(365 P. [2d] 254)

Decided September 25, 1961.   Rehearing denied October 23, 1961.

Mr. THEODORE J. KUHLMAN, Mr. CHARLES A. MURDOCK,
for plaintiff in error.

Messrs. THULEMEYER AND STEWART, Messrs. PETERSEN,

EVENSEN AND EVANS, for defendants in error Elsie Lewis and Laurel A. Peterson.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

Is the law as exacting and scrupulous respecting the proof necessary to establish a common law remarriage as it is regarding the proof required to make out a case of common law marriage? Does the policy of the law disfavoring divorce and encouraging resumption and continuance of the marital tie enjoin relaxation in the matter of proof where the question of remarriage is involved? Affirmance or reversal of the judgment entered in the trial of this case depends upon the answers to these questions.

A petition to determine the heirs of Archie L. Peterson, also known as A. L. Peterson, deceased, was filed in the county court by the sister of the deceased. Her brother joined in the relief sought. Elinor Bourne Peterson, claiming to be the widow of the deceased, alleged heirship in herself. A judgment adverse to Mrs. Peterson was appealed to the district court, where her claim was again denied.

In adjudging that Mrs. Peterson failed to establish that she was the common law wife of the deceased, the trial court concluded:

"If respondent hopes to establish her alleged status as a widow, it must be founded on proof of a common-law marriage subsequent to December 9, 1955. In Klipfel's Estate v. Klipfel, 41 Colo. 40, it was said that the existence of a common-law marriage may be proven by and presumed from evidence of cohabitation as husband and wife and general repute. It was further said, that 'It is necessary that there be evidence both of cohabitation and reputation before such marriage can be presumed. Proof of one alone is not sufficient to sustain the pre-

sumption.' The court further quoted with approval from another case: 'It is not a sojourn, * * * to cohabit is to live and dwell together, to have the same habitation, so that where one lives and dwells there does the other live and dwell with him.' It further said that such a marriage contract must be established by convincing and positive evidence."

It is not necessary to relate the evidence in detail. On the issue of the relationship of the Petersons subsequent to the interlocutory decree of divorce, the evidence is in dispute and in many instances permits of contrary inferences. There is substantial evidence showing that the Petersons reunited after the entry of the interlocutory decree, and there is a body of evidence from which a common law remarriage could be educed. There is admittedly substantial evidence from which opposite conclusions could be drawn.

■ Generally this court, in reviewing the judgment of a trial court, refrains from doing anything more than ascertaining that such judgment finds support in the sum of irreconcilable evidence. Resolution of conflicting evidence is the function of the trier of the facts, not of this court. *Edwards v. Edwards,* 113 Colo. 390, 157 P. (2d) 616. But where standards for weighing the evidence upon which the judgment was founded have been misapplied, reversal must follow.

An often quoted statement from *Hynes v. McDermott,* 91 N.Y. 451, 43 Am. S.R. 67, is persuasive in our determination, particularly since it represents the essence of what this court has said in a number of decisions involving remarriage — *Githens v. Githens,* 78 Colo. 102, 239 Pac. 1023, 43 A.L.R. 547; *Jordan v. Jordan,* 105 Colo. 171, 96 P. (2d) 13; *Shreyer v. Shreyer,* 113 Colo. 219, 155 P. (2d) 990. It was there said, "The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy."

■ The law has been resourceful in developing policies which give stability to the marriage state and seek

to preserve it as a basic institution in our society. So important is the marital relation that the state is said to be an unnamed but vitally interested party in all actions affecting its existence. It is the policy of the law to encourage the permanency and continuity of a marriage and to look with disfavor upon its dissolution. *Githens v. Githens*, supra.

"Remarriage is sufficiently rare in human affairs to justify regarding it as sui generis." *In re Wagner's Estate*, 398 Pa. 531, 159 A. (2d) 495 (1960). Thus regarded, Justice Bok fittingly distinguished between a common law marriage and a common law remarriage in these words:

"These doctrines are familiar enough. We are, however, not dealing with a first marriage but with a remarriage following divorce after twenty years of wedlock. In such case we think that the law's role of mere toleration of the common law relationship should be reversed and the status of remarriage favored, even if acquired with common law informality. If the law allows a spouse, in the generous amount of nine reasons, to establish by divorce that the marriage was a mistake, it should be at least equally eager to let both spouses discover that their divorce was also a mistake. We regard it better to encourage remarriage than to leave such parties under judicial edict that they were living sinfully together for ten years. If children had been born of this relationship, the wisdom of regularizing it if possible would be all the more apparent."

The evidence in this case must be tested and weighed in view of the considerations set forth in this opinion. Not having been so treated, we reverse the judgment so that the evidence may be considered and evaluated in manner consistent with the doctrines and policies expressed in this opinion.

Mr. Justice Moore and Mr. Justice Doyle concur.