## No. 14,968.

### Moffat Coal Company et al. *v.* Industrial Commission et al.
(118 P. [2d] 769)

Decided October 6, 1941.   Rehearing denied October 27, 1941.

Messrs. Hawkins & Hawkins, for plaintiffs in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Morry M. Sterling, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

THIS is a workmen's compensation case in which defendants in error Marie Todd, as widow, and Mary Ann Todd and La Veta Todd as minor children, by order of the Industrial Commission, in accord with the previous action of a referee, were awarded compensation as dependents of Pete Todd, an employee of the plaintiff in error Moffat Coal Company, who met his death in an industrial accident. In an appropriate action the district court approved the award and plaintiffs in error here seek a reversal of the latter judgment.

The primary question is, whether there was sufficient competent evidence before the commission to justify its finding that, as a result of a consummated common-law marriage, Marie Todd, the claimant, was the widow of the deceased employee Pete Todd. With this question resolved in the affirmative, the challenged status of the dependency of the minor defendants in error under section 340, chapter 97, '35 C.S.A., upon the theory of their illegitimacy, is eliminated from consideration.

Marie Todd was the sole witness at the hearing. No attempt was made to rebut or discredit her testimony and it appears therefrom without dispute that she and Pete Todd began cohabiting together as man and wife on May 15, 1936; that from such date the claimant continually has gone by the name of Marie Todd and that Pete Todd habitually introduced her as his wife. It likewise is unquestioned that as a result of this union two children were born, the first, Mary Ann, on September 7, 1937, and the second, La Veta May, on June 5, 1939; that since their birth, consistently with the certificates thereof admitted in evidence, both children have borne the surname of Todd. It may be inferred from the record that the couple and their children resided continuously at Oak Creek, Colorado, where claimant exercised the unrestricted right to charge goods to Pete Todd's account until July 19, 1939, when the two, with the children, went to California to visit claimant's parents. Pete came back to Colorado the latter part of August in that

year. Claimant and the children did not return until after Pete's death. During the period of disjunction some correspondence passed between the couple. Pete sent some clothing for the children and made contributions in money for their support, the modesty in the amounts of which, claimant accounted for by the fact of Pete's partial unemployment. As appears from a letter signed by the mine superintendent of the employer, which was admitted in evidence, Pete Todd, in submitting compensation data to the employer for insurance purposes, named the claimant as his wife and beneficiary, asked that she be notified in case of an accident involving him, and also stated therein that he had two minor children. As being contradictory of this delineation of a typical common-law marital relationship and as precluding any legal finding of such from the evidence, plaintiffs in error rely upon certain statements made by claimant in the course of her direct examination by the referee. In particular the italicized answers to the questions following are quoted by plaintiffs in error as examples of such deficiency:

"Q. Are you the widow of Pete Todd? A. Yes. Q. You and Pete Todd were never ceremoniously married? Is that so? A. No. Q. Did you live together as man and wife? A. Yes, sir. Q. And when did you begin that relationship? A. May 15th, 1936. Q. What was the understanding between you at that time? A. *Well, I thought if he would come and live with me he would marry me, and he kept putting it off and he never did.* Q. Then, you intended at some later date to be married? A. *Yes.* Q. You didn't consider you were married then? A. *I couldn't because I wasn't.*"

Plaintiffs in error contend that this testimony and other of similar import demonstrates: (1) That if there was an agreement between the two with reference to marriage such agreement was one looking to a future marriage rather than one in praesenti; and, (2) that re-. gardless of what may be inferred from the whole evi-

dence concerning Pete's intentions in the matter, the foregoing testimony discloses that claimant at no time consented to a marriage in praesenti with Pete Todd. Upon the first hypothesis plaintiffs in error conclude that the commission's finding of a common-law marriage legally was not warranted, because, quoting from section 1275, 38 C.J.: "Marriage is an executed contract and is distinguished from the agreement or engagement to marry, looking to the future actual marriage." In support of this contention also is cited the following excerpt from the opinion in *Radovich v. Radovich,* 84 Colo. 250, 269 Pac. 22: "It is true that a mere contract for a future marriage can never amount to a common-law marriage even though followed by years of cohabitation and that a plan for a future ceremony is sometimes incompatible with a present marriage, * * *." It is said the second postulate impels the result of the first, since: "The consent of the parties must be mutual; where one party alone consents to the contract, there is no marriage." 38 C.J. 1298, §53.

As being corollary to the foregoing, it is further urged that the finding that claimant is Pete Todd's widow cannot stand because the evidence shows there was at no time a mutual intention to sustain the marital relationship essential to a common-law marriage. *Foley v. Gavin,* 76 Colo. 286, 230 Pac. 618. In their arguments counsel for plaintiffs in error inferentially concede that there is evidence in the record from which the habit and repute of marriage may be inferred, but they assert that such evidence is rendered legally irrelevant by the affirmative testimony of the claimant hereinabove mentioned. In our view the fallacy of the theory of counsel lies in this assumption; this for the reason that while habit and repute of marriage are not essential to the legality of the relationship, evidence thereof is always competent and in itself properly may be the basis for inferring consent to a *contract* of marriage. *Peters v. Peters,* 73 Colo. 271, 215 Pac. 128, 33 A.L.R. 24. To oblit-

erate such evidence in the case at bar would be to destroy the perspective of the picture painted by the record. Thus, at the most, we are confronted with a situation where a portion of the testimony adduced was sufficient to support a finding of a consummated mutual agreement between the parties to take each other presently as husband and wife, and other of the evidence, by reason of claimed self-contradiction by the only witness testifying, was allegedly inconsistent with the first. Obviously, in this view the problem presented was one pertaining to the credibility of the witness and the weight to be accorded her testimony, the resolution of which is reserved to the commission and peculiarly within its province. We are satisfied the commission legitimately may have inferred from the record that in the expressions of the witness pertaining to a future "marriage" she used the latter term as being synonymous with "the ceremony of marriage," and her pronouncement, which was no more than her legal conclusion, that she could not consider herself married because she wasn't, was grounded upon the belief that the formality of a wedding ceremony was a condition precedent to an orthodox marital state. Basis for such inference is furnished by the following excerpt from her testimony: "Q. Now, you said, Mrs. Todd, when you started to live with Pete that you intended to be married later on. That was the arrangement, was it, that you would start living together and at some future date — A. Yes, we would be married. Q. You would have a ceremony performed? A. Yes. Q. Was anything said about that afterwards? A. Two or three times we mentioned we would get married later on, and as I said, he always put me off. Q. Was there any reason for that? A. Not that I know of. Q. It was just something you would take care of later on? A. Yes." Impelling authority for the conclusion reached by the commission, its approval by the district court and affirmance here, is afforded by the case of *Clayton Coal Co. v. Industrial*

*Commission,* 93 Colo. 145, 25 P. (2d) 170, wherein this court, en banc, with no dissents, upheld a finding by the commission of a common-law marriage on facts almost precisely analogous to those in the case at bar. In that case, paralleling the instant record, as plaintiffs in error impliedly concede by their second hypothesis, there was uncontradicted evidence from which a continuing consent of the man to the marital relationship could be implied. There, similarly to the facts here, the evidence attributed the following contradictory statement to the woman, made when the man was in the hospital suffering from the fatal injury: "Poor Mike, I suppose now then we never will be married. We have lived together all these years thinking we would be married and now we wont be able to." Concerning the situation so presented, Mr. Justice Butler, who delivered the opinion of the court, made the following statement: "If those parts of the testimony of Mary Tsikiris to the effect that they always intended to get married but did not, and her statement to the witness Morris to the same effect, stood alone, the finding that Mike and Mary Tsikiris were husband and wife could not be sustained. But they do not stand alone. She was an uneducated woman, unable to read or write, and lacked the ability to choose words with discriminating care. Taking her testimony as a whole, it is reasonable to infer that when she said that they always intended to get married she meant, not that they were not already husband and wife, but merely that they intended to have a formal ceremony performed some time, perhaps the better to evidence their matrimonial status, or for some other reason. 'There is * * * nothing inconsistent in fixing the status per verba de praesenti and agreeing that the marriage then constituted shall be publicly solemnized at a future day.' 18 R.C.L., p. 392." The same language might be used in affirming the judgment in the case at bar. See, also, *Employers Mutual Ins. Co. v. Morgulski,* 69 Colo. 223, 193 Pac. 725, and *Radovich v. Radovich, supra,*

which are consistent with the disposition here made.
The judgment of the district court is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK and MR. JUSTICE HILLIARD dissent.