TEXAS EMPLOYERS' INSURANCE ASSOCIATION et al., Appellants,

v.

Ethel Mae ELDER, Appellee.

No. 15572.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 26, 1954.

Rehearing Denied Jan. 14, 1955.

Burford, Ryburn, Hincks & Ford, Logan Ford, and Clarence A. Guittard, Dallas, for appellant Texas Employers' Ins. Ass'n.

John Ben Shepperd, Atty. Gen., and J. Milton Richardson, Asst. Atty. Gen., for appellant Industrial Accident Board.

West, Howard & Mitchell and James L. Mitchell, Dallas, for appellee.

RENFRO, Justice.

Texas Employers' Insurance Association has appealed from a judgment decreeing Ethel Mae Elder entitled to death benefits under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., as the surviving common-law wife of Grover Cleveland Elder, deceased. The claim was resisted on the ground Ethel Mae was not legally married to Elder because of a prior undissolved marriage to Allen Dade.

The jury made the following findings:

(1) Ethel Mae Elder (appellee) and Elder (the deceased) entered into an agreement to become man and wife.

(1A) They cohabited together as man and wife.

(1B) They held themselves out to the public as man and wife.

(3) Prior to 1932, Ethel Mae and Allen Dade entered into an agreement to become man and wife.

(4) They lived and cohabited together as man and wife.

(5) They held themselves out to the public as man and wife.

Appellee moved for judgment based on the jury's answers, and, in the alternative, for judgment notwithstanding the jury's answers to issues 3, 4 and 5.

Texas Employers' Insurance Association, hereinafter called appellant, moved for judgment on the verdict, and, in the alternative, for judgment notwithstanding the jury's answers to issues 1, 1A and 1B.

Appellant's motion for judgment was overruled.

Judgment entered for appellee recited the court "is of the opinion and finds, in response to the jury's answers to Special Issues Nos. 1, 1A and 1B, that Grover Cleveland Elder and Ethel Mae Elder entered into a valid common-law marriage some time in the year 1934, or subsequently thereto, and that they were husband and wife at the time of Grover Cleveland Elder's death."

Motion for new trial by appellant was overruled, hence the appeal.

Appellant, by its first point, contends the court erred in failing to render judgment in its favor on the jury's finding of a common-law marriage between appellee and Allen Dade prior to her attempted common-law marriage to Elder.

The appellee counters that the evidence establishes by clear and convincing proof that (a) appellee and Elder were husband and wife at the time of Elder's death; the evidence is insufficient to support a finding that appellee and Dade were married prior to 1932; even if the evidence is sufficient to uphold the jury's finding that a common-law marriage existed between appellee and Dade, the court is bound to presume that said marriage was dissolved in absence of evidence to the contrary.

■ The evidence abundantly supports the finding that appellee and Elder agreed to and did live and cohabit together as man and wife from 1934 until the time of Elder's death. Their attempted common-law marriage of course was not valid if she was previously married to Dade and that marriage was never dissolved.

■ There is also ample evidence in the record to uphold the jury's findings that appellee and Dade, prior to 1932, entered into an agreement to, and did, live and cohabit together as husband and wife and so held themselves out to the public.

Although appellee testified she never did more than "sweetheart around" with Dade and spend an occasional night with him, Dade testified that he and appellee were married in 1922 and lived together as man and wife for a period of nine years. He testified in detail about the different places they lived, and the approximate dates they moved from place to place. Other witnesses testified that appellee and Dade lived

together and introduced themselves as man and wife. Included among the witnesses testifying to facts tending to establish a common-law marriage between appellee and Dade were appellee's brother and other relatives.

The controlling question for our determination is whether or not it must be presumed said marriage was terminated prior to appellee's attempted common-law marriage to Elder.

Neither party asked Dade if he ever obtained a divorce from appellee. It was stipulated by appellee in open court, however, that she never obtained a divorce from Dade.

That leaves only the question whether a presumption prevails that Dade obtained an annulment or divorce.

■ While the law does not favor, but merely tolerates, common-law marriages, yet when the facts establish such a marriage, it is as valid and binding as a ceremonial marriage and the law applicable to parties wed under a ceremonial marriage is applicable to parties to a common-law marriage.

Appellant argues that appellee cannot avail herself of a presumption that her marriage to Dade was dissolved by divorce, because (a) of her stipulation, (b) both she and Dade testified at the trial and gave no evidence about a divorce, (c) her marriage to Elder was not ceremonial, (d) by her testimony she was never married to Dade and she cannot now urge a presumption of a dissolution of a marriage she says never existed.

■ The mentioned stipulation was not an admission no divorce was ever granted, but merely an admission "she never got a divorce." It is not an admission or stipulation that Dade had not obtained a divorce.

After appellee and Dade separated in 1931, both remarried. Dade was married to his present wife, Cora, by ceremonial marriage in 1934 and has fourteen children

by her. Appellee married deceased, according to the court's finding, by common-law marriage in 1934 and lived with him until his death in 1952.

■■ When a marriage has been shown in evidence, whether regular or irregular, and whatever the proofs, the law raises a presumption of its legality, not only casting the burden of the proof upon the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of the presumption, that it is illegal and void. The strength of the presumption increases with the lapse of time through which the parties are cohabiting as husband and wife. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S.W. 560.

■ The legal presumption is that the second marriage was valid. This presumption must prevail until rebutted by evidence which negatives the effective operation of every possible means by which a dissolution of the prior marriage could have taken place.

The burden is on the person attacking the validity of the second marriage to prove that the first has not been dissolved. Hudspeth v. Hudspeth, Tex.Civ.App., 198 S.W.2d 768.

■ Appellee proved her marriage to Elder to the satisfaction of the jury. Appellant attempted to show said marriage to be of no effect by reason of her prior marriage to Dade. The burden was on appellant to prove the prior marriage to Dade and that it had not been dissolved. Adams v. Wm. Cameron & Co., Inc., Tex.Civ.App., 161 S.W. 417; Gress v. Gress, Tex.Civ. App., 209 S.W.2d 1003.

Where a marriage is assailed as being invalid on account of a prior marriage having been contracted by one of the parties to the assailed marriage, such prior marriage is presumed to have been dissolved before the second marriage was consummated. This presumption in favor of the validity of the second marriage must prevail, unless rebutted by evidence which

negatives the effective operation of every possible means by which a dissolution of such prior marriage could have been effected. Such presumption is rebuttable, and its effect is to cast upon the opposing party the burden of introducing testimony which, standing alone, is sufficient to negative the presumption. Brown v. Phillips Petroleum Co., Tex.Civ.App., 144 S.W.2d 358; Walsh v. Walsh, Tex.Civ.App., 255 S.W.2d 240.

Appellant offered no rebuttal to the presumption that the prior marriage had been dissolved, except appellee's stipulation that she did not get a divorce from Dade. Such stipulation did not negative the presumption that Dade at some time prior to 1934 got a divorce from her. Considering the lapse of time before Dade and appellee married other parties, that appellee lived with Elder for eighteen years and up to his death, that Dade married Cora by ceremonial marriage in 1934 and still lives with her and their fourteen children, we think the appellant did not discharge its burden of rebutting the presumption of divorce between Dade and appellee.

Dictum in Lopez v. Missouri, K. & T. R. Co. of Texas, Tex.Civ.App., 222 S.W. 695; Dowdle v. United States Fidelity & Guaranty Co., Tex.Civ.App., 242 S.W. 771; and Calhoun v. Dotson, Tex.Civ. App., 32 S.W.2d 656, lends support to appellant's contention that presumption of dissolution of a prior marriage does not apply unless the later marriage is ceremonial. We are not in accord with the language used in the above cases for such holding would violate the rule which accords common-law marriages equal dignity with ceremonial ones, and would be in conflict with the declaration of the Supreme Court that when a marriage has been shown in evidence, whether "regular" or "irregular," the law raises a presumption of its legality.

Appellant argues the presumption of divorce of the first marriage should not prevail because both appellee and Dade appeared as witnesses, citing Christopher v. City of El Paso, Tex.Civ.App., 98 S.W. 2d 394. In the Christopher case a party failed to ask a witness he placed on the stand a question, the answer to which was vital to his case. It was held that he could not take advantage of a presumption to supply facts he failed to elicit from a witness he called to testify. In the instant case, the burden being on appellant to prove divorce had not dissolved the marriage of Dade and appellee, the appellee was under no obligation to question Dade about a divorce. In 14 A.L.R.2d 30, it is cited as a rule, "It appears that a presumption of divorce will not be considered applicable where both parties to the former marriage are before the court," citing two cases, one from California and one from New Mexico. In both cases the husband and wife were parties to the suit on trial. In the instant case, Dade was not a party to the suit on trial. The fact that he did not testify as to whether he had obtained a divorce from appellee did not defeat appellee's right to rely on the presumption of divorce.

Neither is the presumption of divorce rebutted by appellee's testimony that they were never married. Even though appellee thought and testified she and Dade were never married, Dade and the jury thought differently. Dade, contending he was married to appellee and wanting to marry Cora, would reasonably be expected to get a divorce from appellee. We fail to see how her disavowal of a marriage to Dade would prevent her claiming presumption of a divorce obtained by the man who claimed he was married to her. All she had to do to recover the death benefits was to establish a valid marriage to Elder. She did not have to show a divorce from Dade. To defeat the claim, appellant had to show a prior undissolved marriage. Under the facts it was not essential to appellee's recovery to prove a divorce—it was essential to appellant's defense to prove such divorce.

The trial court did not err in overruling appellant's motion for judgment.

Appellant's second point alleges error on the part of the trial court in refusing to permit the Attorney General to participate in the trial as counsel for the Industrial Accident Board, which had intervened to recover from the Association a statutory contribution to the Second Injury Fund.

Appellant filed suit in the district court of Dallas County on October 31, 1952, to set aside an award of the Industrial Accident Board in appellee's favor. The case was tried in May, 1953. A new trial was granted.

On January 15, 1954, the Industrial Accident Board filed an intervention, claiming appellee was not the legal beneficiary of Elder, and that the Industrial Accident Board was entitled to recover from appellant the statutory sum to be paid into the second injury fund. Appellee, on the 18th of January, moved to strike the intervention. On the same date the trial court overruled the motion to strike, the order reciting the petition for intervention should be retained for consideration solely by the court, and that the Attorney General, representing the Industrial Accident Board, should not participate in the trial.

The only ground set up by the Industrial Accident Board was that Ethel Mae Elder "is neither the wife of Grover Cleveland Elder nor a legal beneficiary of Grover Cleveland Elder." The Board had previously, on September 25, 1952, made an award in favor of Ethel Mae Elder, finding at that time that Ethel Mae Elder was the sole legal beneficiary of Grover Cleveland Elder. By its intervention it seeks, in effect, to have its own award set aside by a district court.

Article 8306, Sec. 12c–2, R.C.S., reads as follows: "(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the sum of One Thousand, Five Hundred Dollars ($1,500) to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof."

█ The Industrial Accident Board has no interest in the controversy unless and until it was determined that appellee was not the legal beneficiary of Elder. If that fact had been proved, the intervention plea would have been sufficient to enable the trial court to enter judgment for the Board, it being clear from the record that Elder suffered fatal injuries in the course of his employment, and that no one other than appellee was entitled to receive the death benefits. But it was not incumbent upon the Board to try to defeat the claim of appellee in the district court trial. That was a controversy between appellee, claiming to be Elder's beneficiary, and appellant, claiming she was not Elder's beneficiary. Appellant was not prejudiced because of the Board's exclusion from active participation in the trial. Its position was the same whether the Board intervened or not. The Board was not prejudiced because it was not entitled to any judgment against appellant unless appellee failed to establish her claim for the death benefits.

Under the state of the record we find no reversible error was committed by the trial court.

█ The judgment entered provided for interest from date of the judgment at the rate of six per cent per annum. The judgment should have allowed interest at the rate of four per cent. Article 8306a. The judgment is here reformed to bear interest from date of judgment at the rate of four per cent per annum.

The judgment is reformed and, as reformed, affirmed.