# TEXAS EMPLOYERS INSURANCE ASSOCIATION V. ETHEL MAE ELDER

No. A-5125. Decided July 13, 1955.
Rehearing overruled October 19, 1955.
(282 S.W. 2d Series 371)

28

*Burford, Ryburn, Hincks & Ford, Logan Ford,* and *Clarence A. Guittard,* of Dallas, for petitioner, Ethel Mae Elder.

*John Ben Shepperd,* Attorney General, *Milton Richardson* and *Robert O. Fagg,* Assistants Attorney General, for Industrial Accident Board, intervenor.

The Court of Civil Appeals erred in presuming under the record that claimant's marriage to Allan Dade, her first common law husband, was dissolved before her common law marriage to Grover Cleveland Elder, the deceased employee. Texas Indemn. Ins. Co. v. McCurry, 41 S.W. 2d 215; Nobles v. Texas Indm. Co., 12 S.W. 2d 199; Nixon v. Wichita Land & Cattle Co., 84 Texas 408, 19 S.W. 560.

*West, Howard & Mitchell* and *James L. Mitchell,* all of Dallas, for respondents.

The presumption indulged was proper under the facts of this case, and the court properly assumed that claimant's marriage to her first husband had been dissolved and that her marriage to the deceased employee, whose compensation she claimed was well established by agreement; their living together, and by holding out to the public that they were man and wife. Grigsby v. Reib, 105 Texas 597, 153 S.W. 1124; Berger v. Kirby, 105 Texas 611, 153 S.W. 1130; Schwinze v. Keifer, 105 Texas 609, 153 S.W. 1132.

MR. CHIEF JUSTICE HICHMAN delivered the opinion of the Court.

In the trial court respondent, Ethel Mae Elder, suing as the surviving common-law wife of a deceased employee, Grover Cleveland Elder, recovered judgment against petitioner for death benefits under the Workmen's Compensation Law, Articles 8306 et seq. That judgment was affirmed by the Court of Civil Appeals. 274 S.W. 2d 144. Petitioner defended the action on the ground that the alleged common-law marriage between Ethel Mae and Elder was invalid because of her prior undissolved marriage to Allen Dade. In answer to special issues the jury found that Ethel Mae and Elder entered into an agreement to become man and wife; that they cohabited together as man and wife, and held themselves out to the public as man and wife. The jury made like findings with regard to the relations between Ethel Mae and Allen Dade, the date of the agreement between them to become man and wife being fixed as "prior to 1932." Petitioner alleged that the common-law marriage between Ethel Mae and Allan Dade had not been dissolved, but produced no evidence in support of the allegation.

Respondent brings forward to this court her contention that there is no evidence of probative force that she and Allen Dade ever entered into an agreement to become man and wife. The Court of Civil Appeals overruled that contention and based its judgment of affirmance on the ground of the presumed dissolution of their marriage prior to the subsequent marriage of each to another person. We find it unnecessary to decide that question, for, in our view, the case should be affirmed on the ground upon which the well-considered opinion of the Court of Civil Appeals is based.

■ By the jury findings this situation is presented: Ethel Mae and Allen Dade became husband and wife by a common-law marriage prior to 1932; thereafter Ethel Mae became the common-law wife of Grover Cleveland Elder, the deceased employee. Obviously, if the first marriage had never been dissolved, the second marriage was invalid. There is no evidence that the first marriage had been dissolved or that it had not been dissolved. The Court of Civil Appeals held that in the absence of evidence it will be presumed that the subsequent marriage was legal, and that the prior marriage had been dissolved. We approve that holding.

■ The presumption in favor of the validity of a marriage which, as in this case, has been duly shown to have been contracted is one of the strongest, if, indeed, not the strongest, known to law. "The presumption is, in itself, evidence, and may even outweigh positive evidence to the contrary. The strength of the presumption increases with the lapse of time, acknowledgments by the parties to the marriage, and the birth of children; and the fact that the legitimacy of a child may be involved is a factor in sustaining the validity of the marriage." 55 C.J.S., Marriage, § 43, pp. 892-893. It is well that the presumption should be so regarded, for it is grounded upon a sound public policy which favors morality, innocence, marriage, and legitimacy rather than immorality, guilt, concubinage, and bastardy. Nixon v. Wichita Land & Cattle Co., 84 Texas 408, 19 S.W. 500; Holman v. Holman, Texas Comm. App., 288 S.W. 413; Carter v. Green, Texas Civ. App., 64 S.W. 2d 1069, error refused; Hudspeth v. Hudspeth, Texas Civ. App., 198 S.W. 2d 768, error refused, n.r.e.; 35 Amer. Jur., Marriage, § 191 et seq. Many cases from various jurisdictions supporting the rule that marriage, once being shown, is presumed to be valid are collated in annotations in 34 A.L.R. 464, 77 A.L.R. 729, and 14 A.L.R. 2d 7.

It would be difficult to conceive of a case in which there would be a more impelling reason for the operation of that presumption than in the case before us. Ethel Mae and Elder had been living together as husband and wife for eighteen years before his death. The same year that they entered into that relationship, 1934, Dade married a woman namel Cora by a ceremonial marriage. They had lived together as husband and wife from that time until the trial in 1954, during which time fourteen children had been born to them. If the marriage of Ethel Mae and Elder was not valid, neither was that of Dade and Cora. Courts will gladly resort to any allowable presumption to

avoid the holding that Ethel Mae and Elder were never married and that the mother of Dade's children is not his wife.

Petitioner advances several reasons why the presumption of legality should not be indulged in this case. We shall consider those reasons in the order in which they are presented in the application for writ of error.

■ In the course of the trial of the case it was stipulated by the attorneys for both parties that Ethel Mae never got a divorce from Allen Dade. It is claimed that such stipulation should be construed to mean that no divorce had ever been granted. We do not so construe it. It was not a stipulation that the prior marriage had not been dissolved in a suit by Dade. The question is decided squarely against petitioner's contention in Holman v. Holman, supra. In that case a woman who had been twice married testified that she had never instituted a suit for divorce against her first husband and that she was never served with citation in any divorce suit. But it was held, contrary to the holdings of the Court of Civil Appeals in that case, that, though taken as truth, the testimony failed to negative a dissolution of a prior marriage by means of a court action instituted by the former husband. See also Hudspeth v. Hudspeth, supra. There is no need to cite outside authorities to the same effect, but they are available. See Reed v. Reed, 202 Ga. 508, 43 S.E. 2d 539; In re Pilcher's Estate, 114 Utah 72, 197 Pac. 2d 143; Parker v. American Lumber Corp., 190 Va. 181, 56 S.E. 2d 214, 14 A.L.R. 2d 1. Many other cases from various States are cited in an annotation in 14 A.L.R. 2d 50.

■ It is argued that a presumption of the dissolution of the prior marriage cannot be indulged because both parties to that marriage testified at the trial, and there was no testimony about a divorce or annulment. As a basis for this claim it is contended that the burden rested upon Ethel Mae to prove the legality of her marriage to Elder. We do not understand petitioner to question the well-established rule that, when a marriage has been duly established its legality will be presumed, and the burden of proving the contrary is upon the one attacking its legality. But the claim seems to be that the general rule does not apply in a case brought under the Workmen's Compensation Law, because of the provision in Article 8307, Section 5, that "* * * the burden of proof shall be on the party claiming compensation." This question was decided contrary to petitioner's contention by the Circuit Court of Appeals, Fifth Circuit, in Winder v. Consolidated Underwriters, 107 Fed. 2d 973. The

opinion in that case reasons that "The statute merely imposes the burden. It does not undertake to deal with the nature or quantum of the evidence necessary to discharge it." We agree with that holding. Respondent discharged the burden cast upon her by making proof of her common-law marriage to Elder. The presumption itself supplied the evidence that her prior marriage to Dade had been dissolved. With that rule as a basis we can perceive no valid reason for holding that the presumption of the legality of the second marriage was rebutted by the fact that both parties to the prior marriage testified in the case. Dade was not a party to the suit, but was a witness por petitioner. No duty rested upon Ethel Mae to prove that Dade had obtained a divorce from her; the duty rested upon petitioner to prove the negative fact that the prior marriage had not been dissolved. Its failure to do so gives rise to the strong presumption upon which we base our opinion. We overrule this contention.

■ It is next argued that there is no presumption that parties are competent to enter into a common-law marriage. In support of the claim that the presumption is limited to a subsequent ceremonial marriage and does not obtain in the case of a subsequent common-law marriage, petitioner cites Lopez v. Missouri K. T. Ry. Co., 222 S.W. 695, error dismissed; Calhoun v. Dotson, 32 S.W. 2d 656, no writ history; and Dowdle v. U. S. Fidelity & Guaranty Co., 242 S.W. 771; reversed on other grounds, Texas Com. App., 255 S.W. 388. In so far as those cases may afford support for petitioner's claim, they cannot be regarded as authority, for if they hold what is claimed, that holding is contrary to the generally accepted rule in other jurisdictions, and also contrary to the holding of this court, through the Commission of Appeals in Holman v. Holman, supra. In that case the presumption was employed to legalize a second commonlaw marriage. We can perceive of no valid reason for a distinction between a subsequent common-law marriage and a subsequent ceremonial marriage in so far as the efficacy of the presumption is concerned. But if such a distinction should be recognized, it would not avail petitioner in this case, for Dade was married to Cora by a ceremonial marriage in 1934. The presumption would be that that marriage was legal, and, if it was, then obviously the marriage of Ethel Mae and Elder was legal.

■ It is next argued that because Ethel Mae testified that she was never married to Dade, she cannot claim a presumption of the dissolution of that marriage. The contention, in our view, is

without merit. The question at issue was the legality of the marriage of Ethel Mae to Elder. The law, through a presumption, supplied the evidence that her former marriage to Allen Dade had been dissolved. Certainly she was not estopped by her testimony to rely upon the law governing her case. The question is not what she claimed, but rather what rule of law governed the case as made.

■ The next argument advanced is that, in view of the fact that Ethel Mae and Dade cohabited for nine years, beginning in 1922, there can be no presumption that their marriage was annulled. To sustain this argument would accomplish nothing. If it be granted that the facts negative the annulment of the marriage, the presumption would still obtain that the parties were divorced.

Finally it is argued that the facts now of record completely rebut the presumption of the validity of the marriage between Ethel Mae and Elder. The facts upon which this argument is based will be stated briefly. Following a jury trial the court entered judgment in favor of respondent on March 9, 1954. That judgment was corrected by a *nunc pro tunc* order dated April 5. Motion for new trial was overruled on April 8. Supersedeas bond was filed and the appeal perfected. On November 26 the Court of Civil Appeals released its opinion affirming the judgment of the trial court. On December 20 petitioner filed in the trial court a motion for leave to present additional evidence to the effect that Allen Dade never at any time obtained a divorce from Ethel Mae. On December 28 the trial court ruled that the testimony was on a controversial matter and could not, therefore, be considered, but permitted counsel to interrogate Allen Dade for the purpose of a bill of exceptions. That bill, which disclosed that he would have testified that he had never been divorced, was embodied in a supplemental transcript which was tendered to the Court of Civil Appeals in a supplemental motion for rehearing on January 14, 1955. On that same day a motion for rehearing was denied, and thereafter, on January 28, the motion for leave to file the supplemental transcript in the Court of Civil Appeals was overruled. The point is made here that the Court of Civil Appeals erred in refusing to consider the supplemental transcript. Petitioner's claimed right to have the transcript filed and considered is based on Rule 270, Texas Rules of Civil Procedure, which reads as follows:

"At any time the court may permit additional evidence to be offered where it clearly appears to be necessary to the due ad-

ministration of justice. Provided in a jury case no evidence on a controversial matter shall be received after the verdict of the jury."

■ It will be observed that at the time that motion was filed in the trial court the case had already been affirmed by the Court of Civil Appeals. The trial court did not err in refusing to consider that evidence, for it had lost jurisdiction of the case. While the rule does provide that the court may permit additional evidence to be offered "at any time," that language should not be construed to mean that new evidence should be considered by the trial court after a case has been affirmed by the Court of Civil Appeals. The rule is in the section governing trials in district and county courts, and since the district court did not err, the Court of Civil Appeals properly declined to overrule it. Furthermore, it is provided by the rule that no evidence on a controversial matter shall be received after the verdict of the jury. Clearly, the proffered testimony of Dade was on a highly controversial matter. The only evidence that could be offered under Rule 270, when a case is tried before a jury, is evidence of a conclusive nature which would leave no issue for decision by the jury. The proffered testimony of Dade was not of that nature. Under all the facts of this case the jury might well have disbelieved his proffered testimony which branded his children as offspring of unwed parents. This contention of petitioner is overruled.

In our consideration of this case the question has arisen as to the competency of Dade to testify that he is still the husband of Ethel Mae and that Cora, the mother of his children, had never been legally married to him. Since the question has not been briefed and our decision of it would not affect our judgment in this case, we do not pass on it.

■ The Industrial Accident Board has filed an application for writ of error complaining of the ruling of the trial court, affirmed by the Court of Civil Appeals, on its motion for leave to intervene in this case as an active litigant on the side of the Association. The court permitted the filing of the petition in intervention, but refused to permit the Board to abandon its role as an impartial tribunal and assume the role of an active litigant. We agree with the ruling of the trial court that the Board should not be permitted to join the petitioner as an active litigant. In our view, the Board had no right to intervene at all. It is a public administrative body, created by statute, Article 8307, and possessing only such powers as are conferred upon it

by statute. The right to sue and be sued has not been conferred upon it. It is the general rule that a public administrative body cannot sue or be sued in the absence of statutory authority. 73 C.J.S., Public Administrative Bodies and Procedure, § 26; Henderson v. Scott, 72 N.D. 616, 10 N.W. 2d 490; United States Department of Agriculture v. Hunter, 171 Fed. 2d 793.

The question of the right of the Industrial Accident Board of Texas to become a litigant was before the court in Industrial Accident Board v. Miears, Texas Civ. App., 227 S.W. 2d 571. In that case, Miears, an employee who had theretofore lost one eye in a noncompensable injury, lost the other eye in the course of his employment and the insurance company paid him the full amount to which he was entitled for the loss of one eye. He filed a claim with the Industrial Accident Board for additional compensation out of the Second Injury Fund, Article 8306, § 12c-2. Being dissatisfied with the amount of the Board's award, he filed suit in the district court in the county in which the accident occurred. While the style of the case indicated that the Board was a party litigant, the judgment rendered was against the Second Injury Fund. The Board, represented by the Attorney General's Department, filed a plea in abatement, contending that the suit was against the State of Texas, which had not consented to be sued, and also contending that the suit was in the nature of a writ of mandamus against members of the Board which must be brought in Travis County. It was held, however, that the suit was an appeal from a final order of the Board which was properly brought in the county where the accident occurred. The court agreed with the Attorney General that the suit was against the State, but held that by the statue authorizing appeals from final orders of the Industrial Accident Board the State had consented to be sued in a case of that character. The employee's application for writ of error was granted, and this court reversed the judgment of the Court of Civil Appeals in so far as it reduced the compensation awarded the employee by the district court, but otherwise affirmed that judgment. 149 Texas 270, 232 S.W. 2d 671. We have inspected the record in that case and quote this language from the brief filed by the Attorney General in behalf of the Board:

"It would indeed be a strained construction to say that the Legislature intended by the enactment of this salutary legislation as to second injuries and vesting in the Board, as it does, the administration of the distribution of the Fund, to cast upon the Board the role of a partisan litigant upon the same basis

as a controversy between the claimant and the Association (insurance carrier)."

\* \* \* \* \* \*

"The whole spirit and purpose in the establishment of the Industrial Accident Board and vesting in it the administrative features of the law is that it not be or ever become an *interested party,* as between the parties therein dealt with, and the Legislature never intended to make it so by the use of any language found in Section 5 of Article 8307 quoted above."

The Court of Civil Appeals sustained that contention, holding that in passing upon the lawful claim of an employee against the Second Injury Fund the Board is in the position of a judge in passing upon a case against the State in the court over which he presides. The Board accepted that ruling and in its application for writ of error did not challenge it. Obviously, it was in no position to do so. The holding of the Court of Civil Appeals was followed by another Court of Civil Appeals in State v. Bothe, 231 S.W. 2d 453, and the Board likewise accepted that ruling by not filing an application for writ of error. We are in agreement with the position taken by the Board and the Attorney General's Department in the Miears case and with the holding of the Court of Civil Appeals thereon.

It is claimed that if the Industrial Accident Board is not granted the right to intervene in suits, the Second Injury Fund might sustain losses. If that premise be accepted, that fact would not authorize the court to confer powers upon the Board which the Legislature did not see fit to confer, and thereby create a legal entity by judicial decree. But the fear is not well founded. It cannot be presumed that an insurance carrier and a person who is not, in fact, a legal beneficiary will enter into a conspiracy to settle an invalid claim for less than $1,500.00 in order to relieve the carrier from paying that sum into the Second Injury Fund; but should they undertake to do so their settlement would have to be approved by the Board, if the case was still pending before it, or by the court, if the case was pending before it. Texas Employers' Insurance Assn. v. Miller, 137 Texas 449, 154 S.W. 2d 450. In the event it should be determined that the deceased employee left no legal beneficiary, the State is not without a remedy. The Board could enter an order directing the insurance carrier to pay $1,500.00 into the State Treasury to the credit of the Second Injury Fund. Should the carrier disobey the order, which is not at all likely, the Board could notify the Attorney General, who, on behalf of the State, could institute

suit therefor, or the Board could file a certificate with the Commissioner of Insurance, which would afford grounds for the cancellation of the right of the insurance carrier to write workmen's compensation insurance, as provided in Article 8307, § 5. No reason is perceived why the provisions of that Section would not be available to the Board.

The case is affirmed.

Associate Justice Wilson dissenting.

Opinion delivered July 13, 1955.

Rehearing overruled October 19, 1955.