645 P.2d 356

METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,

v.

Lenore Jensen JOHNSON, Defendant-Appellant,

v.

Lou JOHNSON, Laura Gay Johnson, Lola Lynn Johnson Pfiefer, Lyla Ann Johnson Scanlan and Linda Lee Johnson, Defendants-Respondents.

No. 13563.

Supreme Court of Idaho.

May 12, 1982.

**124**

Lowell N. Hawkes and DaLon Esplin of Lowell N. Hawkes, Chartered, Pocatello, for defendant-appellant.

Dean Williams of Kerr & Williams, Blackfoot, for defendants-respondents.

SHEPARD, Justice.

The sole issue on this appeal is the existence of a valid common law marriage between appellant Lenore Jensen Johnson and the decedent, Lyle E. Johnson. The appeal is from a judgment in an interpleader action distributing the proceeds of a life insurance policy. The trial court held that appellant was not the common law wife of the decedent and awarded the proceeds of the life insurance policy to the decedent's children, the respondents here. We reverse.

Lyle E. Johnson was covered by a policy of insurance on his life written by Metropolitan Life Insurance Company, and upon his death conflicting claims to the proceeds were asserted by Lenore Jensen Johnson and by the decedent's five children, and Metropolitan therefore filed this interpleader action, deposited approximately $11,500 into court, and was dismissed. The beneficiary of the policy was left undesignated, and the policy provided in such event that the proceeds were payable to his surviving spouse or, if he left no spouse, to his children. Lenore Jensen Johnson answered the complaint of Metropolitan and cross-claimed against the Johnson children asserting that she, as the decedent's widow, was entitled to the proceeds. The Johnson children answered and cross-claimed denying the existence of the marriage between Lenore Jensen Johnson and Lyle Johnson and asserted their right to the proceeds since Lyle Johnson did not leave a surviving spouse.

The facts are essentially undisputed. Prior to 1971 Lyle Johnson and Lenore Jensen had been married and those marriages were dissolved, one by divorce and the other by death. In 1971 Lyle and Lenore began keeping company, but each maintained a separate residence, and there was no cohabitation. At one time they set a marriage date but it was cancelled because of the illness of a daughter. Thereafter the couple discussed marriage on several occasions and finally decided to marry on October 22, 1976. On that date, Lenore moved into Lyle's home. Although they also discussed a ceremonial marriage on that date, they believed that such would result in the loss of Lenore's civil service widow pension and that they would not be able to manage financially. The couple's only stable sources of income were Lenore's pension of $200 a month and Lyle's disability pension of $86 a month and social security benefits of about $100 a month. On that date it was also agreed that Lenore and Lyle would enter into a ceremonial marriage in 1984, after Lenore had reached age 60, at which point she would not lose her widow's pension.

On that same date, October 22, 1976, the couple informed Lenore's children that they had been married that day, and Lyle told his youngest daughter that they had been married that day and that Lenore was her new mother. Thereafter their business and personal affairs were managed as husband and wife, and although they kept their previously existing separate checking accounts, they established a joint checking account in the name of Lyle and Lenore Johnson from which their household bills were paid. Their property insurance and medical records reflected a marital relationship, and Lyle's medical records showed Lenore as his next of kin and wife. Automobile insurance records indicated that the couple were husband and wife, and the bills and receipts of everyday transactions indicated Lyle and Lenore represented themselves as husband and wife. Anniversary, birthday and valentine cards between Lyle and Lenore indicated they considered themselves husband and wife, and numerous wedding anniversary, birthday, Christmas, Mother's Day and Father's Day cards, including cards from

Lyle's children, indicated their general reputation in the community as husband and wife. Lenore did receive some mail addressed to Lenore Jensen and her pension check continued to be sent in the name of Lenore Jensen.

In July 1977, Lyle named Lenore as a beneficiary in the amount of $4,000 under a life insurance policy not here at issue wherein she was designated as "Lenore *Jensen*" and her relationship was listed as "friend". Lyle redrafted his will for the sole purpose of changing the executrix and Lenore was not mentioned in that will, although she was aware it was being redrafted. Lenore testified she neither read the document, nor knew of its contents until after Lyle's death.

Following Lyle's death in December, 1977, newspaper obituaries named Lenore as his widow and his death certificate indicated that Lyle was married at the time of death. Lenore did not file for letters of administration in the probate court but did file for a surviving spouse's statutory allowances.

Following trial the court specifically found that Lenore and Lyle held themselves out to the community as husband and wife and enjoyed that reputation in the community and among Lyle's children. The court also found that there was cohabitation and a mutual assumption of marital rights, duties and obligations as between Lenore and Lyle. However, the court found that "on October 22, 1976, the requisite agreement and consent to be married which is a condition precedent to a valid common-law marriage" did not exist between Lenore and Lyle. The court stated:

> "This Court is unwilling to hold as a matter of law that any one of the following single facts, standing alone, would be sufficient to negate a common-law marriage, but the Court is willing to hold as a matter of law that the combination of the following facts are sufficient to negate a consent or agreement to enter into a binding marriage relationship on October 22, 1976:

> (1) Dual identity of Lenore, i.e., Lenore Jensen to the Civil Service Commission and others; Lenore Johnson to the general community.
> (2) An acknowledgment on October 22, 1976 of an intent to enter into a ceremonial marriage at a future date.
> (3) Lenore's acquiescence in being known only as Lenore Jensen, "friend", in Lyle's application for change of beneficiary on his veteran's policy.
> (4) Lenore's acquiescence in not being named as a beneficiary in Lyle's will.
> (5) Lenore's failure to file for Letters of Administration as Lyle's widow and her acquiescence in the filing for Letters by one of the defendant children."

The court thereafter ordered that the proceeds of the policy be delivered to the personal representative of the estate of Lyle Johnson, to be disbursed to his children.

As initially noted, the sole issue on this appeal is whether the trial court erred in its conclusion that Lyle and Lenore did not agree or consent to marry. This case thus affords a unique opportunity to clarify the law of this state with respect to the consent requirement in the context of an asserted common law marriage.

We note that Idaho is among the dwindling minority of states which continue to recognize common law marriage. In 1952, twenty American jurisdictions could be listed as recognizing common law marriage. Weyrauch, *Informal and Formal Marriage—An Appraisal of Trends in Family Organization*, 28 U.Chi.L.Rev. 88, 89 (1960). By 1960, the number was sixteen, *Id.*, and by 1974 the number had diminished to fourteen. Note, *Common Law Marriage and Unmarried Cohabitation: An Old Solution to a New Problem*, 39 U.Pitt.L.Rev. 579, 585–86 (1978). In addition to Idaho, the jurisdictions presently recognizing common law marriages are Alabama, Colorado, the District of Columbia, Georgia, Iowa, Kansas, Montana, Ohio, Oklahoma, Pennyslvania, Rhode Island, South Carolina, and Texas. The trend toward abolition of common law marriage indicates an obvious hostility

to the doctrine. That hostility is not confined to those states which do not recognize common law marriages. The courts of many jurisdictions recognizing the doctrine also view it with disfavor. *Texas Employers' Ins. Ass'n v. Elder*, 274 S.W.2d 144, 147 (Civ.App.1954) ("the law does not favor, but merely tolerates, common law marriages."), aff'd 155 Tex. 27, 282 S.W.2d 371 (1955); *In re Redman's Estate*, 135 Ohio St. 554, 21 N.E.2d 659, 661 (1939) ("So-called common law marriage contravenes public policy and should not be accorded any favor; indeed, it is quite generally condemned."); *Baker v. Mitchell*, 143 Pa.Super. 50, 17 A.2d 738, 741 (1941) ("The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged*."); *McCoy v. District of Columbia*, 256 A.2d 908, 910 (D.C.1969) ("The considerations which history teaches gave rise to judicial recognition of such informal and unrecorded marital agreements can hardly justify modern day perpetuation.") Thus, to discourage common law marriage claims, many jurisdictions recognizing the doctrine impose stringent evidentiary burdens on the party seeking to establish a common law marriage. *Baker v. Mitchell*, 143 Pa.Super. 50, 17 A.2d 738 (1941) (great scrutiny); *Goodman v. McMillan*, 258 Ala. 125, 61 So.2d 55 (1952) (clear and convincing proof; close scrutiny), *cert. denied*, 345 U.S. 929, 73 S.Ct. 789, 97 L.Ed. 1359 (1953); *Chatman v. State*, 513 S.W.2d 854 (Tex.Cr.App.1974) (close scrutiny); *Sardonis v. Sardonis*, 106 R.I. 469, 261 A.2d 22 (1970) (clear and convincing evidence); *In re Marriage of Grother*, 242 N.W.2d 1 (Iowa 1976) (regarded with suspicion and closely scrutinized); *In re Estate of Fisher*, 176 N.W.2d 801, 805 (Iowa 1970) ("when one party is dead, the essential elements must be shown by clear, consistent and convincing evidence"); *In re Estate of Soeder*, 7 Ohio App.2d 271, 220 N.E.2d 547 (1966) (clear and convincing evidence).

■ In contrast with other jurisdictions, Idaho has never viewed the doctrine of common law marriage with disfavor. Together with a small number of other states, Idaho permits a non-ceremonial marriage to be proven by a preponderance of the evidence. *Mauldin v. Sunshine Mining Co.*, 61 Idaho 9, 97 P.2d 608 (1939); *accord Moffat Coal Co. v. Industrial Commission*, 108 Colo. 388, 118 P.2d 769 (1941); *Brown v. Brown*, 234 Ga. 300, 215 S.E.2d 671 (1975); *Miller v. Townsend Lumber Co.*, 152 Mont. 210, 448 P.2d 148 (1968); *Jeanes v. Jeanes*, 255 S.C. 161, 177 S.E.2d 537 (1970). Once a common law claimant meets certain evidentiary requirements, we have held that a presumption as to the validity of the marriage arises which shifts the burden of producing evidence to the opposing party to show by clear and positive proof that the asserted marriage is invalid. *Mauldin v. Sunshine Mining Co., supra; see also, Jeanes v. Jeanes, supra; Taylor v. Taylor*, 10 Colo.App. 303, 50 P. 1049 (1897); *Miller v. Sutherland*, 131 Mont. 175, 309 P.2d 322 (1957).

■ In the first instance, our decision is governed by statute. The pertinent statutory provisions are:

"I.C. § 32–301. How solemnized—Marriage must be solemnized, authenticated and recorded as provided in this chapter, but noncompliance with its provisions does not invalidate any lawful marriage.

"I.C. § 32–201. What constitutes marriage.—Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties or obligations.

"I.C. § 32–203. Proof of consent and consummation.—Consent to and subsequent consummation of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases."

I.C. § 32–301 preserves in this state the doctrine of common law marriage. *Huff v. Huff*, 20 Idaho 450, 118 P. 1080 (1911). Marriage is defined by I.C. § 32–201, and the manner in which consent and consum-

mation may be proven is provided for in I.C. § 32–203. Under I.C. § 32–201, a marriage which is not solemnized requires the mutual consent of competent parties, followed by a mutual assumption of marital rights, duties or obligations. *Hamby v. Simplot Company*, 94 Idaho 794, 498 P.2d 1267 (1972).

It is established that the consent required by I.C. § 32–201 must be given when the parties enter into the contractual responsibilities of marriage. *In re Gholson's Estate*, 83 Idaho 270, 361 P.2d 791 (1961). That consent need not be manifested in any particular manner and no magic words are necessary but rather consent may be express or it may be implied from the parties' acts and conduct. I.C. § 32–203. A requirement of a specific formal contract would be contrary to allowing consent to be implied from the parties' acts and conduct. Thus evidence of conduct by and between the parties consistent with the existence of a common law marriage may be probative of consent. When persons having the capacity to contract have held themselves out to be husband and wife, and have gained that general reputation in the community, or where they acknowledge that they are husband and wife, a court may be warranted in drawing the inference that at the outset there was then present mutual consent between the parties to assume a marital relationship.

The prior decisions of this Court make clear that when a couple cohabit, assume the rights, duties and responsibilities of marriage, and hold themselves out as being married, a presumption of marriage arises which, if disputed, must be overcome by clear and positive evidence. As was stated in *Mauldin v. Sunshine Mining Co.*, 61 Idaho 9, 17, 97 P.2d 608, 611 (1939):

> "The rule adopted in this jurisdiction is that the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy, every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law

raises a strong presumption of its legality, casting the burden of proof upon the party objecting and requiring him in every particular, to make plain, against the constant pressure of this presumption the truth of law and fact that the marriage is illegal and void."

*Accord, In re Estate of Brock*, 94 Idaho 111, 482 P.2d 86 (1971); *In re Foster*, 77 Idaho 26, 287 P.2d 282 (1955); *Thomey v. Thomey*, 67 Idaho 393, 181 P.2d 777 (1947); *Morrison v. Sunshine Mining Co.*, 64 Idaho 6, 127 P.2d 766 (1942); *Nicholas v. Idaho Power Co.*, 63 Idaho 675, 125 P.2d 321 (1942). Since in most instances, questions as to the existence of such a marriage will arise only after death, a marriage may be proven by the testimony of one of the parties. *Mauldin v. Sunshine Mining Co., supra; Labonte v. Davidson*, 31 Idaho 644, 175 P. 588 (1918). In the instant case the trial court found the existence of all of the elements of a common law marriage, save and except that of the mutual consent of the parties. The trial court, however, held that certain facts in combination negated a consent of the parties to enter into a binding marriage relationship.

The best evidence of such consent or agreement to a common law marriage would be a written agreement, signed by both parties, manifesting their consent to such a marriage. In the absence of a writing, the next best evidence would be the testimony of both parties to the asserted marriage, or the testimony of others that may have been present when the specific agreement was made. However, our prior cases make clear that the I.C. § 32–201 element of consent may be proven by circumstantial evidence such as cohabitation, reputation and the manner in which the couple characterize their relationship. Although those previous cases do not involve the specific point of consent, we now do specifically hold that consent may be implied from the conduct of the parties. *See In re Estate of Brock, supra; In re Foster, supra; Morrison v. Sunshine Mining Co., supra; Nicholas v. Idaho Power Company, supra; Mauldin v. Sunshine Mining Co., supra.*

We hold that the clear evidence of cohabitation, of assumption of the rights, duties and responsibilities of marriage and the holding themselves out to the community as husband and wife establish the presumption of marriage, including the element of consent. Further we note that Lenore's specific testimony of happenings of the morning of October 22, 1976 was in itself sufficient to establish consent.

The question then becomes whether the evidence of certain matters overcame, rebutted or negated that presumption of marriage. The trial court so held and relied in part upon Lenore's "dual identity" in remaining Lenore "Jensen" to the Civil Service Commission for the purpose of continuing to receive a pension. That fact is not probative of the couple's consent to marry. Rather, a person's "dual identity" might be relevant in regard to whether the couple enjoyed a reputation as husband and wife. The court below relied upon *Hamby v. Simplot Company, supra,* and *In re Gholson' Estate, supra,* for the proposition that a party's "dual identity" may tend to negate the element of consent. We disagree. This Court held in those cases that the evidence of reputation was insufficient to establish the presumption of marriage, and indicated that the party's "dual identity" is evidence of reputation. Here the trial court clearly found that Lenore and Lyle enjoyed a uniform and general reputation as husband and wife in the community in which they cohabited. We would also note that had Lenore and Lyle gone through a ceremonial marriage, Lenore's continued acceptance of her widow's pension as Lenore "Jensen" would not have negated her consent to enter into a ceremonial marriage, nor rendered that marriage invalid or void.

The trial court also held that certain other facts negated the consent of Lyle and Lenore to marry on October 22, 1976. Those facts are stated as Lenore's "acquiescence" in 1) Lyle's designation of her as "Lenore Jensen, friend" upon a life insurance change of beneficiary form, 2) not being named as a beneficiary in Lyle's will, and 3) not filing for letters of administration in Lyle's estate. Assuming that the evidence supports those findings, all of those incidents occurred long subsequent to October 22, 1976, and therefore are not probative of or relevant to the question of whether the couple on that date consented to marry. At most, they raise an inference that the couple did not always hold themselves out as husband and wife, which is in specific opposition to the lower court's specific findings that they did hold themselves out as husband and wife. Once parties agree or consent to marry and consummate the marriage by mutual assumption of marital rights, duties and obligations, their subsequent actions cannot defeat the marriage since there is no common law divorce. *In re Foster, supra.*

Finally, the trial court held that although not alone sufficient to negate consent, Lyle and Lenore had an intention or desire to have a ceremonial marriage at a future date. We have previously held, as have many other courts, that a desire for a ceremonial marriage does not necessarily preclude the existence of a common law marriage. *In re Foster, supra; Mauldin v. Sunshine Mining Co., supra; Moffat Coal Co. v. Industrial Commission,* 108 Colo. 388, 118 P.2d 769 (1941); *Brown v. Brown,* 234 Ga. 300, 215 S.E.2d 671 (1975); *In re Estate of Fisher,* 176 N.W.2d 801 (Iowa 1970); *Gillaspie v. E. W. Blair Construction Co.,* 192 Kan. 455, 388 P.2d 647 (1964).

In summary, we hold that consent to enter into a common law relationship may be implied and established from the circumstances and facts of the parties' relationship in cohabiting, assuming the rights, duties and obligations of marriage, and holding out of themselves as husband and wife. Here it is established that Lyle and Lenore were persons without impediment, who consented to and consummated a marriage by cohabitation and mutual assumption of marital rights, duties or obligations in compliance with I.C. § 32–201. That evidence established a strong presumption of marriage, casting the burden of proof upon the contestants to rebut such presumption by clear and positive evidence. The evidence

of the respondents was either not probative of the element of the consent of the parties on October 22, 1976, or insufficient to overcome the presumption of marriage.

The judgment of the trial court is reversed and the cause is remanded with instructions to enter judgment in favor of appellant, Lenore Jensen Johnson. Costs to appellant. No attorney's fees on appeal.

BAKES, C. J., and McFADDEN, DONALDSON and BISTLINE, JJ., concur.