Carolyn KNAUS *v.* Lawrence Ralph RELYEA, Administrator, et al.

CA 87-274                                              746 S.W.2d 389

Court of Appeals of Arkansas
Division I
Opinion delivered March 16, 1988

8

*The McMath Law Firm, P.A.*, by: *Eileen Harrison*, for appellant.

*The Niblock Law Firm*, by: *Katherine C. Gray*, for appellee.

JAMES R. COOPER, Judge. The appellant, Carolyn Knaus, petitioned the Carroll County probate court seeking an order finding that she had entered into a valid common law marriage with the deceased Mark Relyea in Colorado and requested that the court enter an order recognizing the marriage. After a hearing, the probate judge found that the appellant had failed to establish that she was the lawful surviving spouse of Mark Relyea. From that decision, comes this appeal.

The appellant argues four points for reversal: that the court erred when it found that the appellant failed to establish a present agreement between the appellant and Mark Relyea to become husband and wife; that the court erred in finding that the appellant did not establish a mutual and open assumption of the marital relationship; that the court erred in finding that plans for a future wedding ceremony were contrary to a present agreement to become husband and wife; and, that the court erred in finding that representations made to Mark Relyea's parents, the appellees, were inconsistent with a present agreement to be husband and wife. We affirm.

In probate cases, we review the record *de novo*, but we will not reverse the probate judge's decision unless it is clearly erroneous or against a preponderance of the evidence, giving due regard to his opportunity to determine the credibility of the witnesses. *Chrisos* v. *Egleston*, 7 Ark. 82, 664 S.W.2d 22 (1983); ARCP Rule 52(a). Common law marriages are not permitted in Arkansas, but the State will recognize marriages contracted in another state which are valid by the laws of that state. *Walker* v. *Yarbrough*, 257 Ark. 300, 516 S.W.2d 390 (1974); Ark. Stat. Ann. § 55-110 (Repl. 1971) [Ark. Code Ann. § 9-11-107 (1987)]. One seeking to prove the existence of a valid common law marriage in another state must do so by a preponderance of the evidence. *Allen* v. *Wallis*, 279 Ark. 149, 650 S.W.2d 225 (1983).

The appellant began living with Mark Relyea in Colorado on November 19, 1982. According to the appellant, while they lived in Colorado they performed "informal ceremonies" in which they pledged their love for one another and their intent to remain together forever. They represented themselves to their friends in Colorado as life mates and spouses.

They decided to purchase land in Arkansas, and build a

home near Eureka Springs. In the autumn of 1983, they purchased land in Arkansas. The property was conveyed by deed to Carolyn Knaus, "a single person." They then moved to Louisiana.

Entered into evidence were letters written by the appellant and Mark Relyea while they were living in Louisiana, in which they addressed each other as "husband" and "wife." According to the appellant, they reaffirmed their promise to be together always and they exchanged rings. In April 1984 they returned to Arkansas to permanently settle.

While in Arkansas, they continued to represent to others that they were life mates and, on two occasions, Mark Relyea referred to the appellant as his wife. They opened a joint savings account in Eureka Springs, with rights of survivorship.

In the summer of 1984, Mark and the appellant announced to the appellees that they were planning to get married in the autumn of 1985. The appellant and Mark Relyea went to visit the appellees in their home in New York. During the visit the appellant and Mark occupied separate bedrooms, and told the appellees that, although they were living together, they were not having sexual relations.

Mark Relyea died in an accident at work on March 23, 1985. Following his death, the appellant wrote a newspaper article in which she stated that she and Mark were to be married. Approximately two months later, the appellant wrote a letter to the appellees requesting that they recognize her as Mark's common law wife and asking that they share any proceeds from a pending wrongful death suit with her. Also entered into evidence was the death certificate of Mark Relyea, which indicated that he was not married.

After hearing all the testimony, the probate judge wrote a letter to the parties which stated his reasons for finding that a common law marriage did not exist. The judge found that the acceptance of the deed by the appellant in which she was designated a single person, the declarations of the appellant and Mark Relyea to friends and family that they were going to be married in the fall of 1985, and the publication in the newspaper of the article by the appellant which stated that they were going to be married negated a present consent to be husband and wife.

The appellant first argues that the trial court erred in finding

that there was no present agreement between the appellant and Mark Relyea to become husband and wife. We disagree.

According to Colorado law, in order to establish a common law marriage there must be mutual consent or agreement of the parties to be husband and wife followed by a mutual and open assumption of a marital relationship. *People* v. *Lucero*, ___ Colo. ___, 747 P.2d 660 (1987). The contract alone is not sufficient unless it is followed by its consummation, that is, by cohabitation as husband and wife. *Id.; Taylor* v. *Taylor*, 10 Colo. App. 303, 50 P. 1049 (1897). In *Lucero*, the Colorado Supreme Court stated:

> Although language in some of our cases could be read as suggesting that mutual consent or agreement is the only essential element of a common law marriage, we have almost uniformly required that such consent or agreement be manifested by conduct that gives evidence of the mutual understanding of the parties. [cites omitted] We affirm today that such conduct in a form of mutual public acknowledgment of the marital relationship is not only important evidence of the existence of mutual agreement but is essential to the establishment of a common marriage . . . adding the requirement of open marital cohabitation gives assurance that some objective evidence of the relationship will have to be introduced in every case to establish that the parties did consider themselves husband and wife. [cite omitted]

747 S.W.2d at 663-4. In the case at bar, there simply is not enough "objective evidence" to hold that by a preponderance of the evidence a present agreement existed between the appellant and Mark Relyea to be husband and wife.

The appellant testified about the informal ceremonies that she and Mark participated in while living in Colorado. She stated that they exchanged mutual promises to remain together for life, and that their "souls were one." However, many of the couple's friends and acquaintances testified, by deposition, that they never heard Mark and the appellant refer to one another as husband and wife. Although we agree with the appellant's assertion that those terms are not conclusive, the appellant herself testified that they avoided using those terms because their

relationship was non-traditional and "they make men unequal," and that while she understood the legal term marriage, neither she or Mark would use the terms married, husband or wife in public. Further, cohabitation alone is not sufficient to establish a common law marriage. See *Pickett* v. *Pickett*, 114 Colo. 59, 161 P.2d 520 (1945); *Walker* v. *Yarbrough, supra*. The appellant simply has not established that there was mutual agreement between herself and Mark Relyea to be married. *See Lucero, supra*.

The appellant next argues that the trial court erred in finding that the appellant had failed to establish a mutual and open assumption of the marital relationship. We disagree.

All of the testimony from friends and acquaintances testified that the appellant and Mark used the terms "life mate" and "spouse" when referring to each other. They also testified that the appellant and Mark acted like a married couple, and that they viewed them as husband and wife. However, the writings introduced into evidence that were written by the appellant and Mark while they resided in Colorado do not use the terms "husband" and "wife," but in the notes and cards which were written while the couple lived in Louisiana, Mark and the appellant did use the terms "husband" and "wife." Furthermore, the appellant and Mark told his parents that they were engaged to be married, and that although they lived together, they did not engage in sexual relations. Shortly after Mark's death, the appellant wrote a letter to the newspaper about Mark in which she stated that they were to be married. The appellant's name appeared on the deed as a single person, and Mark's death certificate indicated that he was single.

The evidence in this case is conflicting, and it was for the probate judge to determine where the credibility of the witnesses lay. *Chrisos* v. *Egleston*, 7 Ark. App. 82, 644 S.W.2d 326 (1983). In a close case the trial court is in a better position than the appellate court to evaluate the weight of the witnesses' testimony. *Arkansas State Highway Commission* v. *Troutman*, 240 Ark. 424, 399 S.W.2d 686 (1966).

The appellant next argues that the trial court erred in finding that plans for a future ceremony were contrary to a present agreement between the appellant and Mark Relyea to be hus-

band and wife. We disagree.

Although the Colorado courts have held that future plans of a formal ceremony would not negate a present agreement to be husband and wife, there is nothing in Colorado law or Arkansas law which prevents considering such future plans as evidence of what the intent of the parties was. In the cases relied on by the appellant the evidence of a common law marriage was virtually conclusive. *Moffat Coal Co.* v. *Industrial Commission*, 108 Colo. 388, 118 P.2d 769 (1941), was a workers' compensation case in which the appellant, Marie Todd, and her two minor children were attempting to get death benefits after her common law husband died. In that case, Marie Todd used her husband's last name, they had two children who also bore the last name of Todd, the parties had charge accounts in which Marie Todd was given unrestricted use, and the decedent, Pete Todd listed Marie Todd as his wife on employment and insurance forms. The court said, "there is nothing inconsistent in fixing the status per *verba de praesenti* and agreeing that the marriage then constituted shall be publicly solemnized at a future day." 118 P.2d at 772.

In the case at bar, the evidence is not as overwhelming in support of a common law marriage, and therefore, it was not error for the probate judge to consider the future marriage plans.

The appellant's last argument concerns the representations the appellant and Mark made to his parents. According to the appellant, the couple kept the true status of their relationship a secret because they knew Mr. and Mrs. Relyea would not approve and they did not want to hurt the Relyeas. This fact alone, in Colorado courts, probably would not negate a present intent to be married in the face of overwhelming evidence. *See Employers Mutual Insurance Co.* v. *Morgulaski*, 69 Colo. 223, 193 P. 725 (1920). However, we cannot say that it was error for the trial court to consider these facts in this case where the evidence was not as clear.

Affirmed.

COULSON and JENNINGS, JJ., agree.