Sheldon B. CORWIN and Mary L. Frame, Plaintiffs-Appellants,

v.

William McMURTREY and Diane McMurtrey, Defendants-Respondents.

No. 45312.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 10, 1984.

John H. Lamming, J.B. Carter, Clayton, for plaintiffs-appellants.

David C. Welsch, Burton M. Greenberg, St. Louis, for defendants-respondents.

KELLY, Judge.

Sheldon Corwin and Mary L. Frame [1] appeal from an Order of the Circuit Court of Lincoln County granting the respondents, William McMurtrey and Diane McMurtrey, a Summary Judgment pursuant to a Motion for Summary Judgment filed by the McMurtreys as authorized by Rule 74.04, in a civil action based upon breach of contract. For reasons hereinafter stated we reverse and remand to the trial court for further proceedings.

The law of Missouri regarding appellate review of summary judgments is well settled. We examine the record in the light most favorable to the party against whom the judgment was rendered and give to that party the benefit of every doubt. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 27[1] (Mo.App.1978).

The facts, as gleaned from appellants' First Amended Petition, respondents Answer, and affidavits filed both in support of and against the motion are as follows. In August of 1973 the appellants were husband and wife, as were the respondents, when both couples entered into a contract with Alvin and Adell Adams, husband and wife, for the purchase of the Adams' 340 acre farm and personal property therein. According to the terms of this written contract the purchase price of the farm was $500,000.00, with a total down payment of $50,000.00. Upon payment of the purchase price, title was to be conveyed by the Adamses by General Warranty Deed to the parties as tenants in common, with an undivided one-half interest in all of the personal property conveyed with the land. The parties also had an oral understanding that they were to live on the real estate which was the subject of the contract of purchase and share jointly in the management obligations as well as the income produced from the real estate and the personal property therein.

---

1. Appellants shall hereinafter be referred to as the Corwins, except where it becomes necessary to refer to them in their post-dissolution of marriage names.

Each couple was to pay ½ of the $50,-000.00 down payment and ½ of the $50,-000.00 annual installment payment on the total purchase price of $500,000.00. The Corwins paid their share of the down payment and of the first installment, a total of $50,000.00; this constitutes their cash contribution to the purchase of the farm and the personalty.

The parties entered into an oral agreement whereby they were to live on the farm and share jointly in the management obligations and the income produced from the realty and personalty. They did live on the farm and jointly managed it until sometime later. At a time the record does not disclose, a second oral agreement was entered into between the parties whereby the McMurtreys became the sole managers of the farm and the personalty, and were to enjoy all of the profits and "pain" [sic], from its operation after they paid their share of the obligations outstanding to the Adamses.

About this time the Corwins' marriage ran on the rocks; she shot him, and divorce proceedings were instituted.

On June 7, 1974, William McMurtrey was arrested in West Palm Beach, Florida, for possession of controlled substances and sometime thereafter Sheldon Corwin was also arrested as a co-conspirator with William McMurtrey on the same charge.

In August, 1974, while the Corwins were having their marital problems and Sheldon Corwin was still suffering from the multiple gunshot wounds inflicted upon him by his wife, the McMurtreys presented the Corwins with an "Assignment" reciting that "for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations" the Corwins agreed to assign, sell and convey to the McMurtreys all of their undivided one-half interest in and to the real and personal property purchased from the Adamses for a total price of $500,000.00. This document also recited that in consideration of the assignment the McMurtreys would assume and agree to meet the installment payments under the Adams contract, that they would indemnify and hold harmless the Corwins "from any claim, demand or cause of action arising out of said agreement," and, further, that the Adamses consented to the assignment and agreed to release the Corwins "from any claim under said agreement."

At some subsequent date, not alleged in the First Amended Petition nor mentioned in the supporting affidavits, the respondents took title to the realty and personalty from the Adamses without naming the Corwins as having a one-half undivided interest in the real estate and personalty.

The relief sought by appellants was an Order (1) declaring appellants have an undivided one-half interest in the realty and the personalty being used for the farming operation; (2) for the partition and/or sale of the realty and personalty; (3) for reasonable attorney's fees and costs, and for such other and further orders as the court deemed proper.

Respondent's joint Answer admitted that they were husband and wife and residents of Lincoln County, Missouri; that the cause of action arose in said county; the purchase contract of August, 1973, for the farm and personalty wherein it was provided that the parties were each to have an undivided one-half interest in same, and denied all other allegations contained in the First Amended Petition. It also contained allegations that: (1) appellant's cause of action was barred by the Statute of Frauds, § 432.010 RSMo 1969; (2) the appellants assigned their interest and title in said real and personal property to respondents; and (3) the appellants' First Amended Petition failed to state a cause of action.

On September 15, 1981, respondents filed a Motion for Summary Judgment contending that the undisputed evidence, as shown by a copy of the assignment, and affidavits of the McMurtreys attached to the Motion for Summary Judgment proved "beyond dispute" that the appellants had assigned all of their right, title and interest in the real and personal property in dispute to the respondents for full and valuable consideration; so there was "no issue of material fact."

The affidavits of the McMurtreys were identical, stating that they were defendants in the action and that "Exhibit A," attached to their affidavits, was a true and correct copy of the assignment signed and executed by the plaintiffs as assignors and the affiants as assignees.

Sheldon Corwin and Mary L. Frame filed almost identical counter-affidavits, the thrust of which are that: (1) the assignment was not supported by any consideration; (2) at the time it was signed by them, Sheldon Corwin was critically injured from multiple gunshot wounds and the Corwins were involved in divorce litigation and settlement proceedings; (3) that William McMurtrey's arrest on drug charges in June, 1974, put Ms. Frame in apprehension of further joint dealings with the appellants at the time the assignment was procured; (4) that at the time the Corwins signed the assignment, respondents represented that if the Corwins would execute the assignment, the McMurtreys would manage the property until such time as the Corwins' emotional and physical condition would permit them to resume their role in the joint venture, as they had previously; (5) that they further represented to the Corwins at that time that the Corwins' ability to retain their ½ interest in the realty and personalty would not be impaired by their signing the assignment; (6) that Mr. McMurtrey further represented that his only motive in obtaining the Corwins' signature on the assignment was to remove their burden for potential tax liabilities in relation to the property at a time when it would be difficult and especially onerous for them to have to pay taxes on the property because of Mr. Corwin's injuries and the Corwins' dissolution of marriage proceedings; (7) that in signing the Agreement, the Corwins relied on the representations made by the McMurtreys but subsequently discovered the falsity of respondents' motives and representations; (8) that had they known of the falsity of these representations, and that the motives of the McMurtreys were false, they would not have executed the assignment; and (9) that the representations of the McMurtreys were false, fraudulent, and misleading, and made for the purpose of inducing them to sign the Agreement and to defraud them of their interest in the lands and personalty for which they had paid considerable money.

The Motion for Summary Judgment was argued, taken under submission and granted. The appellants filed a timely notice of appeal.

Appellants claim that the trial court erred in granting summary judgment because there are three material and genuine fact issues precluding the granting of summary judgment presented by this First Amended Petition and their counter-affidavits, i.e.: (1) whether they acted under duress in executing the assignment; (2) whether they were fraudulently induced to execute the assignment; and (3) whether the assignment was supported by adequate consideration.

Rule 74.04(c) provides that a summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that any party is entitled to a judgment as a matter of law. In no case, however, shall a summary judgment be rendered on issues triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law. Rule 74.04(b).

Appellants' position in this court is that they instituted this "Civil Action based upon contract, money had and paid, and quantum meruit," seeking a "declaration of a constructive or resulting trust or an order compelling the partition and sale of certain real and personal property."

The question before the court in the Motion for Summary Judgment was whether the appellants assigned all of their rights, interests, and title to the real and personal property in the farm and personalty to the McMurtreys.

Appellants do not deny executing the assignment; however, they contend that their signatures on the document were procured by fraudulent representations made to

them by the McMurtreys. They support this contention by statements contained in their counter-affidavits filed in the cause. These allegations were not refuted by respondents.

We are not faced with the question whether these affidavits plead a cause of action in fraud, nor whether the allegations therein can be proved at trial. What we are concerned with is whether they demonstrate that there is a genuine issue of fact on a material issue in this case. We believe there is, and that it was prejudicial error for the trial court to grant respondents' motion for Summary Judgment.

Reversed and Remanded.

PUDLOWSKI and SMITH, JJ., concur.